1

**The Kelly Law Firm, L.L.C.**
13430 N. Scottsdale Road, Suite 106
Scottsdale, AZ 85254
Aaron M. Kelly – (AZ Bar #025043)
Tel: 480-686-2064
Fax: 1-866-961-4984
Email: aaron@aaronkellylaw.com
Attorney for Defendant Doe

2

3

4

5

6

7    IN THE UNITED STATES DISTRICT COURT

8    FOR THE DISTRICT OF ARIZONA

9

10   PATRICK COLLINS, INC.,                    No: 2:11-cv-01602-GMS

11              Plaintiff,                      **DEFENDANT DOE NO. 6'S OMNIBUS**
                                               **MOTION TO (1) QUASH SUBPOENA**
12        v.                                   **PURSUANT TO FED. R. CIV. P.**
                                               **45(C)(3) OR IN THE ALTERNATIVE**
13                                             **ISSUE A PROTECTIVE ORDER; AND**
                                               **(2) MOTION TO SEVER**
14   JOHN/JANE DOES  1-54,                     **DEFENDANTS FOR MISJOINDER**

15              Defendants.

16

17        Comes Now, Defendant  J. Doe No. 6 ("Doe"), by and through its undersigned

18   counsel, and moves the Court to quash,  pursuant to Rule 45(c)(3)(A), Fed. R. Civ. P.,

19   that subpoena as served upon Neustar Inc., seeking information that further identifies

20   Doe, as well as the other Doe Defendants.  In the alternative Defendant seeks a Motion

21   for Protective Order from this Court, pursuant to Rule 26(c), prohibiting any party from

22   publicly disclosing any  information relating to Defendant that Plaintiff obtains via the

23   subpoena, including requiring any pleadings filed in this action that contain Defendant's

24   confidential information to be redacted and filed under seal to prevent public disclosure.

25   Lastly, Defendant seeks discretionary severance for misjoinder and thereby brings a

26   Motion to Sever with the Motion to Quash (collectively "Motions").

27        Doe's Motions are supported by the following Memorandum of Points and

28   Authorities and all pleadings on file with the Court, which are all hereby incorporated by

-1-

1   reference.

2   **MEMORANDUM OF POINTS AND AUTHORITIES**

3   **I.   FACTS.**

4   This is a copyright infringement case based upon the alleged unauthorized

5   sharing through "peer-to-peer" ("P2P") technology of Plaintiff's copyrighted video

6   "Cuties 2" (the "Work").   On August 15, 2011, Plaintiff filed this lawsuit seeking

7   damages for copyright infringement against 54 unidentified parties (collectively the

8   "Does").  See, *Complaint*, Doc. 1.  Plaintiff has allegedly used geolocation technology to

9   determine that on particular dates, an Internet Protocol ("IP") address allegedly

10  participated in the unlawful P2P sharing of Plaintiff's copyrighted Work could be traced

11  to a physical location within certain cities or communities of Arizona, but this is the only

12  information that Plaintiff possesses regarding each Doe.  See, Complaint at ¶4, 7, Ex A.

13  Plaintiff alleges personal jurisdiction over each Doe based upon the infringing act

14  occurring in Arizona and/or that each Doe resides in Arizona, and/or that each Doe has

15  systemic contacts with the state.  *Id.*at ¶4.  Plaintiff cannot be certain of the specific basis

16  of personal jurisdiction for any particular Doe.  Venue is alleged in that each Doe, or its

17  agent, resides within this District, but again, Plaintiff cannot be certain of this fact.  *Id.*at

18  ¶5.  In order to consolidate and join each Doe, Plaintiff makes the dubious allegation that

19  each Doe has acted in concert to infringe on Plaintiffs copyrighted Work.

20  Defendant Doe No. 6, or IP address No. 68.0.166.136, contends that Plaintiff has

21  initiated this lawsuit for the improper purposes of abusing the subpoena authority of this

22  Court in order to identify, and thereafter harass or embarrass, each Defendant Doe and

23  bully its way to coerced individual settlements.   Plaintiff seeks to accomplish this end

24  through means of misjoinder of all the Does, thereby allowing a single discovery

25  opportunity to obtain private and sensitive information about each Doe that Plaintiff

26  would not otherwise bother to obtain through a separate lawsuit.  As addressed more

27  fully below, this particular approach to prosecution of these types of copyright

28  infringement cases, including similar litigation initiated by this very same Plaintiff, has

1    been condemned by the District Courts of this and other Federal Circuits.

2            On or about August 26th, 2011,  Plaintiff sought and obtained permission, via a

3    Rule 45 subpoena on two Internet Service Providers ("ISPs"), Cox Communications and

4    Qwest Communications.  The subpoena sought specific information about each

5    Defendant Doe including the names, current and permanent addresses, telephone

6    numbers, email addresses, and Media Access Control addresses ("MAC addresses").

7    See, Subpoena.  When given a particular IP address an ISP might be able to provide this

8    information.  Defendant emphasizes "might" as there exists "software solutions that

9    allow users to 'spoof' or impersonate false IP addresses…MAC address tracing is

10   unreliable because ISPs are unable to detect users' MAC addresses, most ISPs do not

11   store MAC address data, and there are ways to fake MAC addresses…[and] because

12   MAC address tracing is unreliable, Plaintiff will be unable to verify who downloaded

13   the copyrighted material and where the copyrighted material was downloaded."  See,

14   *Hard Drive Productions, Inc. v. Does 1-188*, --- F.Supp.2d ---- (2011), 2011 WL

15   3740473 *4. These software solutions, like Virtual Private Networks ("VPN") or other

16   spoofing software, are easily available.

17           According to Plaintiff, all Doe Defendants participated in a "peer-to-peer"

18   ("P2P") network in which the Defendants exchanged "pieces" or fragments of the Work

19   using an internet file sharing method known as BitTorrent (hereinafter, "BitTorrent

20   protocol" or "BitTorrent technology" or "BitTorrent"), thereby taking part in what

21   essentially amounts to a civil conspiracy to commit copyright infringement. Doc. 1 at ¶¶

22   13–42.  In essence, Plaintiff alleges that each Doe has used BitTorrent to acquire a

23   "fragment" or "piece" of the work and then shared that fragment with others  which

24   "could" eventually generate a "fully playable" digital motion picture of the work.  *Id.*at

25   ¶¶ 15-42.

26           By way of example, Plaintiff explains that a copyrighted work such "Cuties"

27   might be broken up into "hundreds or thousands" of pieces.  *Id.*at ¶ 33.  Plaintiff alleges

28   only that over single incidents of downloading activity per Doe, which occurred over the

course of approximately three months, each Doe may have intentionally downloaded a "piece" of the Work through BitTorrent technology. *Id.*¶39.  Plaintiff then concludes that each Doe was therefore "part of the same series of transactions" and allegedly participated in a swarm involving interaction and communication with other computer users that may have allowed for some users to download sufficient pieces to constitute a viewable portion of the Work.  *Id.*at ¶39-42.  According to Plaintiff, some BitTorrent users are "seeders", some are "trackers," and others are merely "downloaders."  *Id.*at ¶¶18-34.  The participation status of each Doe is not specified or alleged.  Plaintiff claims that its technological expert has "verified that re-assemblage" of the Work is *possible* from the pieces that the Does allegedly willfully downloaded. Id at ¶ 41-42.  However, Plaintiff does not offer any declaration on behalf of such expert attesting to the methods used, or the results that are obtained.   Plaintiff does not allege whether each Doe downloaded all, or even a significant portion of the pieces sufficient to constitute an infringement on the Work.   Rather, Plaintiff alleges that each Defendant Doe participated in the same swarm.[1] This is particularly troublesome because the alleged downloading of the various pieces by each of the Does occurred at different times and places. See, Doc. 1, Exh. A.  The alleged swarm activity would appear to have occurred between May 18, 2011 (Doe No. 29) and July 15, 2011 (Doe No. 23). As explained by the Court in *Hard Drive*:

> Under the BitTorrent Protocol, it is not necessary that each of the Does… participated in or contributed to the downloading of each other's copies of the work at issue—or even participated in or contributed to the downloading by any of the Does…Any "pieces" of the work copied or uploaded by any individual Doe may have gone to any other Doe or to any of the potentially thousands who participated in a given swarm. The bare fact that a Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals across the country or across the world . . . Indeed, Plaintiff concedes that while the Doe Defendants may have participated in the same swarm, they may not have been

---

[1]A more through discussion of Bittorrent technology can be found in *Boy Racer, Inc. v. Doe*, 2011 U.S. Dist. LEXIS 92994 (N.D. Cal. Aug. 19, 2011).

physically present in the swarm on the exact same day and time.[2]

Lastly, there is the factual issue that Plaintiff did not obtain a valid copyright registration until May 26, 2011, which is three days *after* Defendant Doe No. 6 is alleged to have engaged in the unlawful P2P file sharing with BitTorrent technology.

## II.    Legal Standards

### A.    Standing

A party has standing to challenge a subpoena issued to a third party when the party has a personal or proprietary interest in the information sought by the subpoena. See Washington v. Thurgood Marshall Acad., 230 F.R.D. 18, 21 (D.D.C. 2005).

### B.    Authority to Quash Subpoena or Grant Protective Order

Under Rule 45(c)(3), a court must modify or quash a subpoena that, *inter alia,* "requires disclosure of privileged or other protected matter, if no exception or waiver applies, or subjects a person to undue burden." Fed.R.Civ.P. 45(c)(3)(A). A court may modify or quash a subpoena that, *inter alia,* requires disclosing confidential information. Fed.R.Civ.P. 45(c)(3)(B). Furthermore, Rule 26(c)(1)(A) provides:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending ... The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... forbidding the disclosure or discovery.

Fed.R.Civ.P. 26(c)(1). The court also must:

> …limit the frequency or extent of discovery otherwise allowed by [the Federal Rules of Civil Procedure] or by local rule if it determines that ... the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2)(C)(iii).  Finally, the rules pertaining to protective orders allow the court to impose a broad array of protections as an alternative to forbidding the discovery

---

[2] *Hard Drive Prod.*, -- F.Supp. --- (2011), 2011 Westlaw 3740473 at *10-11.

or discovery. See, Rule 26(c)(1)(B)-(H). These include forbidding the inquiry into certain matters or limiting the scope of disclosure or discovery; prescribing a discovery method other than the one selected by the party seeking to obtain discovery; and requiring that a deposition or other discovery record be sealed and opened only as the Court directs. Fed.R.Civ.P. 26(c)(1)(C),(D),(F) and (H).

### C.    Permissive Joinder

Under Rule 20(a)(2), permissive joinder of defendants is proper if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed.R.Civ.P. 20(a)(2). Rule 20(a)(2) is designed to promote judicial economy and trial convenience.  Even where Rule 20(a)'s requirements are met, "a District Court must examine whether permissive joinder would comport with the principals of fundamental fairness or would result in prejudice to either side." *Hard Drive Prod.* At *6.  See also *Coleman v. Quaker Oats Company*, 232 F.3d 1271, 1296 (citing *Desert Empire Bank v. Insurance Co. of North America*, 623 F.2d 1371, 1375).

### D.    Discretionary Severance

Rule 21 provides that "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed.R.Civ.P. 21. Thus this Court is permitted to dismiss Doe No. 6 from the present litigation by way of severance or otherwise.

Further, pursuant to Rule 20(b), a district court is permitted to sever claims or parties where "[i]nstead of making the resolution of [the] case more efficient . . . joinder would instead confuse and complicate the issues for all parties involved." See, e.g., *Wynn v. National Broadcasting Company*, 234 F. Supp. 2d 1067, 1088 (C.D. Cal. 2002) (finding that even where Rule 20 requirements for joinder are satisfied, the Court may

exercise its discretion "to sever for at least two reasons: (1) to prevent jury confusion and judicial inefficiency, and (2) to prevent unfair prejudice to the [defendants]") (citing *Coleman*, 232 F.3d at 1296). Id at 17.

### III.     Argument to Quash – Improper Motive for Discovery

This is not this Plaintiff's first BitTorrent copyright infringement lawsuit,[3] and it will unlikely be its last.  In fact, much like a plague of locusts, lawsuits like the one at hand have recently swarmed Courtrooms throughout the United States by Plaintiff and others similarly situated.  See, e.g. *K-Beech, Inc. v. John Does 1-85*, 3:11-cv-00468-JAG (E.D. Va., filed October  5, 2011)[4] (Attached hereto As Exhibit A); *Hard Drive*, supra, *VPR Internationale v. Does 1–1017,* Case No. 11–2068 (C.D. Ill., filed Apr. 29, 2011); *Millennium TGA, Inc. v. Does 1–800*, Case No. 10–05604 (N.D. Ill., filed Sept. 2, 2010); *First Time Video v. Does 1-500*, No. 10 CV 6254 (N.D.Ill. filed December 2, 2010) 2010 WL 5632708;   See also, *Other Cases filed by this Plaintiff* cited in Fn. 2. Fortunately, in each of these cases, the Courts have soundly criticized and roundly rejected the Plaintiffs' arguments and dismissed their claims. Indeed, Courts have been highly wary of these types of cases and their criticism has been vitriolic.  See, e.g. *VPR Internationale* at p.3 ("the court will not be used to advance a 'fishing expedition by means of a perversion of the purpose and intent of a class action'").  In *K-Beech*, supra, the Court explained the basis for such strong rejection of the Plaintiffs' litigation tactics:

> …According to some of the defendants, the plaintiffs then contacted the John Does, alerting them to this lawsuit and their potential liability. Some defendants have indicated that the plaintiff has contacted them directly with harassing telephone calls, demanding… compensation to end the litigation. When any of the defendants have filed a motion to dismiss or sever themselves from the litigation, however, the plaintiffs have immediately voluntarily dismissed them as parties to prevent the defendants from bringing their motions before the Court for resolution.

---

[3] See e.g., *Patrick Collins, Inc. v. Does 1-26*, 11 CV-01656-CMA-MJW (D. Colo.); *Patrick Collins v. Does 1–1219,* 2010 WL 5422569 (N.D.Cal. Dec.28, 2010).

[4] Attached hereto As Exhibit A.

This course of conduct indicates that the plaintiffs have used the offices of the Court as an inexpensive means to gain the Doe defendants' personal information and coerce payment from them. The plaintiffs seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does. Whenever the suggestion of a ruling on the merits of the claims appears on the horizon, the plaintiffs drop the John Doe threatening to litigate the matter in order to avoid the actual cost of litigation and an actual decision on the merits.[5]

In *Democratic Underground*, No. 2:11-cv-01356, Dkt. 94 (D. Nev., filed April 14, 2011), the Court described these for profit copyright lawsuits as Plaintiffs' "attempts to create a cottage industry of filing copyright claims, making large claims for damages and then settling claims for pennies on the dollar".

In perhaps the most explicit demonstration and subsequent repudiation of Plaintiffs' for-profit litigation model, Judge Beeler of the U.S. District Court for The Northern District of California, directly rebuked Plaintiff Patrick Collins, Inc., (the same Plaintiff as the instant action) in an identical BitTorrent case involving 188 Doe defendants stating in response to an order to show cause:

> [t]he court has no confidence that Plaintiff has been diligent in moving to name and serve defendants, despite its (unsworn) claims to the contrary…. Here, Plaintiff has not identified or served any of the 1,219 Doe Defendants. However, on May 10, 2011, Plaintiff filed a stipulation dismissing with prejudice a Doe Defendant who settled with Plaintiff. ECF No. 13 at 1. And, on August 18, 2011, Plaintiff filed a stipulation dismissing with prejudice more than thirty Doe Defendants who settled. ECF No. at 1-2. The plaintiffs in these cases appear content to force settlements without incurring any of the burdens involved in proving their cases.  And, while the courts favor settlements, "filing one mass action in order to identify hundreds of doe defendants through pre-service discovery and facilitate mass settlement, is not what the joinder rules were established for." IO Group, Inc. v. Does 1-435, No. CV10-4382 SI, 2011 WL 445043, at *6 (N.D. Cal. Feb. 3, 2011).[6]

Plaintiff's claims and litigation tactics here are no different from the other actions

---

[5] *K-Beech*, supra at p. 4. Attached as Exhibit A.

[6] Order Dismiss. Comp. *Patrick Collins, Inc, v. Does 1-1,219* Case 4:10-cv-04468-LB Dkt No. 27 (D. Cal. 2011) 08/29/11.

cited above.  Indeed, Plaintiffs action constitutes a reprehensible attempt to abuse and misuse the process of this Court.

Finally, some Doe Defendants, in an effort to perhaps avoid the embarrassment or professional and/or personal ruin that would accompany a public accusation of consumption of a pornographic title such a "Cuties," ,or perhaps fearing the massive life-altering damages, could elect to quickly and anonymously acquiesce to Plaintiff's coercive demands, only to find later the case severed. Such a scenario has already been explored by various Courts. In denying a motion for early discovery based solely on BitTorrent IP addresses identical to this case, Judge Baker astutely asked:

> [c]ouldn't discovery be used to wrest quick settlements, even from people who have done nothing wrong? The embarrassment of public exposure might be too great, the legal system too daunting and expensive, for some to ask whether [Plaintiff] has competent evidence to prove to prove its case.

*VPR Internationale v. Does* 1-1017, 2011 U.S. Dist. LEXIS 64656, 5-6. Defendant Doe would urge prudence and caution for the benefit of all parties. This is especially critical to Defendants' arguments, as a finding of misjoinder followed by dismissal would greatly reduce the chance that Plaintiff will re-file this action. Defendant strongly asserts its innocence, but the realities of federal litigation and false accusations are neither unnoticed nor insignificant.

Plaintiff's subpoena is also facially invalid as the technology and methods utilized to identify the potential Defendant is unreliable—leading to a significant risk of misidentification. Moreover, Plaintiff's copyright registration was not filed until May 26, 2011, three days *after* Plaintiff Doe No. 6 allegedly participated in a swarm involving the yet to noticed as copyrighted material. For these additional reasons, the subpoena should be quashed.

### III.    Alternative Protective Order

If the Court denies Defendant's request that the Court quash the subpoena, Defendant asks that the Court issue a Protective Order pursuant to Rule 21(c)(1)(A) to protect Defendant from undue hardship, annoyance, embarrassment, and oppression.

1    In the event that any discovery would be allowed, Defendant would request the Court

2    impose sufficient protections to avoid such undue harsdship, annoyance, embarrassment

3    and oppression. This would be accomplished by prohibiting Plaintiff, except through

4    counsel, from contacting pro se Does and by prohibiting any party from publicly

5    disclosing any information relating to Doe Defendants that Plaintiff obtains via the

6    subpoena, including requiring any pleadings filed in this action that contain Defendant's

7    confidential information to be redacted and filed under seal to prevent public disclosure.

8    **IV.    Argument for Misjoinder**

9    The Plaintiff has failed to demonstrate any right to relief against the Doe

10   Defendants arising out of the same transaction, occurrence, or series of transactions or

11   occurrences. 'Merely committing the same type of violation in the same way does not

12   link defendants together for purposes of joinder. K-Beech, supra at p. 3 (citing *Laface*

13   *Records, LLC v. Does 1-38*, No. 5:07-CV-298, 2008 U.S. Dist. LEXIS 14544, at *7

14   (E.D.N.C. Feb. 27, 2008)).  Note that just recently Judge Gibney imposed a show cause

15   order as to why Rule 11 sanctions should not issue in the *K-Beech* litigation, stating:

16
        The plaintiffs conduct in these cases indicates an improper purpose for the suits.
17      In addition, the joinder of unrelated defendants does not seem to be warranted by
        existing law or a non-frivolous extension of existing law…[P]ursuant to Rule
18      11(c)(3), the Court, therefore, will direct the plaintiff and its counsel to show
        cause why the conduct specifically described in this Memorandum Order has not
19      violated Rule 11(b)."

20

21   *Id.*at pp. 4-5.  Upon facts strikingly similar to those in the present case, Judge Gibney

22   concluded that: [t]he mere allegation that the defendants have used the same peer-to-peer

23   network to copy and reproduce the Work—which occurred on different days and times

24   over a span of three months—is insufficient to meet the standards of joinder set forth in

25   Rule 20. *Id.*at 4 (citing Diabolic Video Productions, Inc. v. Does 1-2099, No. 10-CV-

26   5865, 2011 U.S. Dist. LEXIS 58351, at *10-11 (N.D. Cal. May 31, 2011); and

27   Millennium TGA, Inc. v. Does 1-21, No. 11-2258, 2011 U.S. Dist. LEXIS 53465, at *6-

28   7 (N.D. Cal. May 12, 2011)).

Relying on the same authority, the Court came to the same conclusions in *Hard Drive Prod*.  In fact, the Court conducted a thorough survey of the caselaw addressing P2P downloading, including pre-BitTorrent technology, and concluded that while some courts have accepted the assertion that Doe defendants who have participated in the same "swarm" to download a copyrighted work may be properly joined, such a conclusion was contrary to the cases involving earlier P2P technologies and inconsistent with Rule 20(a)'s purpose and requirements. Citing a series of cases from the Northern District of California, Judge Spero pointed out that as a threshold matter, Rule 20(a)(20 simply did not authorize joinder where "the only commonality" between copyright infringers was that each committed the exact same violation. Hard Drive Prod. at 11, *9.

**V.     Arguments for Discretionary Severance**

In *Hard Drive Production*, the court pointed out three specific reasons why discretionary severance was the proper remedy granted to Defendant Doe.  First, Judge Speno pointed out that permitting joinder in such a case would undermine Rule 20(a)'s purpose of promoting judicial economy and trial convenience because it would result in a logistically unmanageable case. *Id.*at 11, *14 (citing See Bridgeport Music, Inc. v. 11 C Music, 202 F.R.D. 229, 232–33 (M.D.Tenn.) (holding permissive joinder of 770 putative defendants would not promote judicial economy because the court's courtroom could not accommodate all of the defendants and their attorneys, and therefore could not hold case management conferences and could not try all of plaintiff's claims together). Here obviously there are not that many Defendant Does, but the realities of consolidating 54 Doe Defendants certainly cuts against promoting judicial economy and trial convenience.

Second, the court pointed out that permitting joinder would force the Court to address the unique defenses that are likely to be advanced by each individual Defendant, creating scores of mini-trials involving different evidence and testimony. *Id.*  In this respect, this Court should consider that Exh. A to the Complaint lists at least two different ISP providers whom offer different types of service (home, business and

mobile) and each Doe will thereafter have separate and different home, business or mobile (or combinations thereof) network configurations that will allow varied defenses and create issues as to whom could have or would accessed the internet and downloaded the copyrighted "pieces" of the Work and when and where they did so. With each Doe comes a myriad of questions of whether they had a wireless network that could have been accessed, whether the IP came from a public computer or place, and whether any particular Doe's computer may have been compromised.

Finally the *Hard Drive* court found that permissive joinder of the Doe Defendants does not comport with the "notions of fundamental fairness," and that it will likely cause prejudice to the putative defendants. See *Coleman*, 232 F.3d at 1296. Judge Speno suggested that:

> [t]he joinder would result in numerous hurdles that would prejudice the defendants. For example, even though they may be separated by many miles and have nothing in common other than the use of BitTorrent, each defendant must serve each other with all pleadings—a significant burden when, as here, many of the defendants will be appearing pro se and may not be e-filers. Each defendant would have the right to be at each other defendant's deposition—creating a thoroughly unmanageable situation. The courtroom proceedings would be unworkable—with each of the 188 Does having the opportunity to be present and address the court at each case management conference or other event. Finally, each defendant's defense would, in effect, require a mini-trial. These burdens completely defeat any supposed benefit from the joinder of all Does in this case, and would substantially prejudice defendants and the administration of justice.

*Id.* The difference between the number of Doe's is not as important as the fact that the same procedural concerns arise and the difference in unmanageability becomes negligible at some point as the court's resources are undoubtedly limited.

Principally, permitting joinder would defeat the purpose underlying Rule 20(a), judicial economy, because the court would be unable to efficiently accommodate all fifty-four (54) defendants and their attorneys, hold case management conferences, nor try all defendants' claims together in a manner that does not prejudice Defendants. Moreover, service of documents among the parties, likely to include numerous pro-se defendants unaccustomed to the Rules of Civil Procedure, and would be nearly

impossible to coordinate. This Court would also be strained and compelled to address each defendant's unique defenses, thereby resulting in a series of minitrials.

Moreover the *Hard Drive Prod.* court summed up its analysis on severance by noting that the claim that all Doe Defendants met the Rule 20(a) joinder requirement was "speculative and conclusory." Id at 11 *15.   As in the present case, Judge Speno pointed out that while Plaintiff asserts that Doe Defendants conspired with each other to download the work, Plaintiff also asserts that 'each defendant is a *possible* source of Plaintiff's file, and *may* be responsible for distributing the file to the other defendants.' *Id*. The Plaintiff also conceded the Doe Defendants 'may not have been physically present in the swarm on the exact same day and time,' which in the present case is not a question of "may" but rather a certainty that Defendant Doe were present in a swarm, if at all, at different dates and different times. See, Complaint, Ex. A. Thus Judge Speno concluded:

> [i]n light of Plaintiff's *uncertainty about the role of each particular Doe Defendant* <u>and</u> *the relationship between the Doe Defendants*, the Court finds it appropriate to exercise its discretion to sever all of the Doe Defendants but one in the *interest of fairness*. The Court rejects Plaintiff's assertion that severing the Doe Defendants would 'practically prevent copyright holder plaintiffs from being able to protect their material,' as the Court's severance does not preclude Plaintiff from filing individual copyright infringement actions against each Doe Defendant.

*Id*.

## VI.    Conclusion.

WHEREFORE, for the above stated reasons, Defendant respectfully requests that the Court enter an Order quashing the August 11, 2011 subpoena issued to Defendant's ISP as well as dismissing the Plaintiffs Complaint in its entirety or severing each Defendant because of the improper joinder. In the alternative, if the Court does not quash the subpoena, Defendant respectfully requests that the Court enter a protective order prohibiting the public disclosure of any of Defendant's confidential information obtained through the subpoena, including requiring that any pleadings filed in this action that contain such confidential information be redacted or filed under seal.

1

2

3 Certificate of Compliance with Rule 26(c)(1), Fed. R. Civ. P., counsel for Defendant has

4 attempted to confer in good faith with Plaintiff's counsel concerning the relief

5 Defendant seek herein. Plaintiff's counsel indicated verbally that it would not consent or

6 otherwise stipulate to the relief and it would indeed oppose Defendants' Motion.

7

8        Respectfully Submitted this 21st day of October, 2011

9                              **The Kelly Law Firm, L.L.C.**

10

11                              /s/ Aaron M. Kelly, SBN 025043

12                              13430 N. Scottsdale Road, Suite 106
Scottsdale, Arizona 85254

13                              aaron@aaronkellylaw.com
Tel: 480-686-2064

14                              Attorney for Defendant – J. Doe No. 6

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-14-

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of October, 2011, I electronically transmitted

the attached document to the Clerk's Office using the CM/ECF System for filing and

transmittal of a Notice of Electronic Filing to the following CM/ECF Registrants:

> Ryan J. Stevens
> 309 N. Humphreys Street, Ste. 2
> Flagstaff, Arizona 86001
> stevens@flagstaff-lawyer.com
> Attorney for Plaintiff

/s/ Rachel N. Eisner

# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

.

K-BEECH, INC.,

                Plaintiff,

v.                                      Civil Action No. 3:11cv469-JAG

JOHN DOES 1-85,

                Defendants.

## MEMORANDUM ORDER

This case concerns the alleged uploading and downloading of the pornographic film "Gangbang Virgins" (the "Work") using a peer-to-peer file sharing client known as BitTorrent. The plaintiff filed a complaint (the "Complaint") for copyright infringement on July 21, 2011, claiming that 85 John Doe defendants violated the United States Copyright Act, 17 U.S.C. §§ 101-1332, in securing and sharing a copy of the Work over the internet. [1] To establish personal jurisdiction in this district, the plaintiff used geolocation technology and traced the Internet Protocol ("IP") addresses of each defendant to acquire the general location and time of the alleged infringement. (Complaint ¶ 4.)

On July 26, 2011, the Court granted the plaintiff's request for leave to take discovery prior to the Rule 26(f) conference, authorizing it to serve Rule 45 subpoenas on the internet service providers ("ISPs") named in Exhibit A of the Complaint. Upon due consideration,

---

[1] Plaintiff's counsel filed virtually identical complaints in three cases before this Court, including the instant case: Civil Case Nos. 3:11cv469, 3:11cv531, and 3:11cv532. Various Doe defendants have filed motions to sever, quash, or dismiss in all three cases. None of the motions are ripe at this time; however, they present similar, if not identical, issues. In the interest of justice, the Court, *sua sponte*, determined that this Memorandum Order was necessary to conform to the Federal Rules of Civil Procedure.

however, the Court finds that Doe defendants 2-85 have been improperly joined in violation of Federal Rule of Civil Procedure 20(a)(2). For the reasons stated herein, the Court finds that all defendants except Doe 1 should be SEVERED from this case.

### Discussion

The BitTorrent software at issue allows a person to visit a private website and download a file containing the desired digital media onto a program already installed on the user's computer. Once the file is loaded, the BitTorrent program connects to hundreds or thousands of different users that possess and share copies of the particular media contained in the file, and it coordinates the copying of the media using the digital copies of those other users. As the original user (or "peer") downloads his or her copy, it is immediately made available to other users looking to obtain the file. In this way, the collection of users who simultaneously "share" a particular file is known as a "swarm." The plaintiff, in essence, relies on this "swarm" theory to claim that the defendants acted in concert through a series of transactions to commit the infringement. (*See* Compl. ¶ 10.) The Court, however, disagrees with this conception of proper joinder under the Federal Rules of Civil Procedure.

Under Rule 20(a)(2), permissive joinder of defendants is proper if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Rule 20(a)(2) is designed to promote judicial economy and trial convenience. *See Mosley v. Gen. Motors*, 497 F.2d 1330, 1332-33 (8th Cir. 1974). Furthermore, Rule 21 provides: "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at

2

any time, on just terms, add or drop a party. *The court may also sever any claim against a party.*" Fed. R. Civ. P. 21 (emphasis added).

In short, the plaintiff has failed to demonstrate any right to relief against the defendants arising out of the same transaction, occurrence, or series of transactions or occurrences. "Merely committing the same type of violation in the same way does not link defendants together for purposes of joinder." *Laface Records, LLC v. Does 1-38*, No. 5:07-CV-298, 2008 U.S. Dist. LEXIS 14544, at *7 (E.D.N.C. Feb. 27, 2008). The Court agrees with Judge Spero's analysis in a recent decision from the United States District Court for the Northern District of California:

> Under the BitTorrent Protocol, it is not necessary that each of the Does 1-188 participated in or contributed to the downloading of each other's copies of the work at issue—or even participated in or contributed to the downloading by any of the Does 1-188. Any "pieces" of the work copied or uploaded by any individual Doe may have gone to any other Doe *or to any of the potentially thousands who participated in a given swarm*. The bare fact that a Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals across the country or across the world . . . Indeed, Plaintiff concedes that while the Doe Defendants may have participated in the same swarm, they may not have been physically present in the swarm on the exact same day and time.

*Hard Drive Productions, Inc. v. Does 1-188*, No. C-11-01566, 2011 U.S. Dist. LEXIS 94319, at *39-40 (N.D. Cal. August 23, 2011) (internal quotation marks omitted).

The mere allegation that the defendants have used the same peer-to-peer network to copy and reproduce the Work—which occurred on different days and times over a span of three months—is insufficient to meet the standards of joinder set forth in Rule 20. *See Diabolic Video Productions, Inc. v. Does 1-2099*, No. 10-CV-5865, 2011 U.S. Dist. LEXIS 58351, at *10-11 (N.D. Cal. May 31, 2011); *see also Millennium TGA, Inc. v. Does 1-21*, No. 11-2258, 2011 U.S. Dist. LEXIS 53465, at *6-7 (N.D. Cal. May 12, 2011). Accordingly, the Court concludes that joinder of the Doe defendants in this action does not satisfy Rule 20(a). In the interest of

fairness, the Court finds it appropriate to exercise its discretion under Rule 21 to sever all of the defendants but one.

The Court also finds that the plaintiff should be required to show cause why certain conduct does not violate Rule 11 of the Federal Rules of Civil Procedure. The Court currently has three similar cases before it, all brought by the same attorney.[2] The suits are virtually identical in their terms, but filed on behalf of different film production companies. In all three, the plaintiffs sought, and the Court granted, expedited discovery allowing the plaintiffs to subpoena information from ISPs to identify the Doe defendants. According to some of the defendants, the plaintiffs then contacted the John Does, alerting them to this lawsuit and their potential liability. Some defendants have indicated that the plaintiff has contacted them directly with harassing telephone calls, demanding $2,900 in compensation to end the litigation. When any of the defendants have filed a motion to dismiss or sever themselves from the litigation, however, the plaintiffs have immediately voluntarily dismissed them as parties to prevent the defendants from bringing their motions before the Court for resolution.

This course of conduct indicates that the plaintiffs have used the offices of the Court as an inexpensive means to gain the Doe defendants' personal information and coerce payment from them. The plaintiffs seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does. Whenever the suggestion of a ruling on the merits of the claims appears on the horizon, the plaintiffs drop the John Doe threatening to litigate the matter in order to avoid the actual cost of litigation and an actual decision on the merits.

---

[2] *See supra* note 1. The Court will enter a similar show cause order in each case.

The plaintiffs' conduct in these cases indicates an improper purpose for the suits. In addition, the joinder of unrelated defendants does not seem to be warranted by existing law or a non-frivolous extension of existing law.

Pursuant to Rule 11(c)(3), the Court, therefore, will direct the plaintiff and its counsel to show cause why the conduct specifically described in this Memorandum Order has not violated Rule 11(b). *See* Fed. R. Civ. P. 11(c)(3); Fed. R. Civ. P. 11(b).

## Conclusion

For the forgoing reasons, the Court ORDERS that:

1.      All the defendants except Doe 1 are hereby SEVERED from this action, and no discovery shall occur until the parties have conducted a discovery conference pursuant to Federal Rule of Civil Procedure 26(f);

2.      The subpoenas served on the ISPs listed in Exhibit A of the plaintiff's Complaint (Dk. No. 1) are hereby QUASHED as to all the defendants, Does 1-85;

3.      The plaintiff SHALL IMMEDIATELY NOTIFY the recipients of these subpoenas that said subpoenas have been quashed and that the defendants, except Doe 1, have been severed and are not litigants in this case;

4.      The defendant is directed to file, under seal, copies of all notices sent to Doe defendants pursuant to paragraph 3 above;

5.      Within thirty (30) days from the entry of this Memorandum Order, the plaintiff may file individual complaints against those Doe defendants whom it wishes to proceed. Upon election to proceed, the plaintiff shall submit to the Clerk of the Court filing fees for each of the complaints against those defendants whom the plaintiff wishes to proceed. Such cases will be assigned separate civil action numbers and placed on the Court's docket;

6.    Civil action No. 3:11cv469 shall be assigned to Doe 1 as an individual defendant. The actions filed within 30 days of this Memorandum Order against any other Doe defendants severed from this case will be deemed to have been filed as of July 21, 2011, the date of the filing of the original Complaint;

7.    Any filings that can be construed as motions in Civil Action No. 3:11cv469 are hereby DENIED AS MOOT;

8.    The plaintiff is directed, henceforth, not to file any notices of dismissal pursuant to Federal Rule of Civil Procedure 41 relating to any parties in this action;

9.    The plaintiff and its counsel are directed to show cause within ten (10) days why the conduct specifically described in this Memorandum Order does not violate Rule 11(b).  If the plaintiff or its counsel desires a hearing on the issue of sanctions, they should contact the Court's chambers to arrange a time and date.

It is SO ORDERED.

Let the Clerk send a copy of this Memorandum Order to all counsel of record and mail a certified copy to each interested party of record.

Date: <u>October 5, 2011</u>
Richmond, VA

/s/ _____
John A. Gibney, Jr.
United States District Judge