**STEVENS LAW OFFICE, PLC**
Ryan J. Stevens (AZ Bar No. 026378)
309 N. Humphreys Street, Ste. 2
Flagstaff, Arizona 86001
Phone: (928) 226-0165
Fax: (928) 752-8111
stevens@flagstaff-lawyer.com
*Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PATRICK COLLINS, INC., | Case No. 2:11-CV-01602-PHX-GMS |
| Plaintiff. | |
| v. | |
| JOHN DOES 1-54, | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM EXPLAINING THE IMPACT OF PIRACY ON U.S. BUSINESSES, ITS BUSINESS, THE SCALE OF BITTORENT PIRACY, AND WHY IT SUES DOE DEFENDANTS**

1

# **TABLE OF CONTENTS**

I.   Introduction……………………………………………………………………..4
II.  Facts………...…………………………………………………………..............4-14
    A.   Online Piracy Affects Everyone…………………….............................4-6
    B.   Competing In a Rigged Marketplace – The Lure of Free……………..…6-7
    C.   The Executive Branch and Congress Are All Very Concerned With the Jobs And Money Lost From Online Piracy…………………..…………………8
    D.   Core Copyright Businesses Comprise a Huge Part of The U.S.'s Economy……………………………………………………………………...8-9
    E.   Piracy of Adult Content Impedes Parents Ability to Prohibit Children from Watching It……………………………………………………………..………….9
    F.   Why Is Plaintiff Bringing These Suits?……………………………..…….9-13
        1.   Professional Digital Pirates Situate Themselves Overseas; And, Thumb Their Noses at Copyright Owners…………………………………...10-13
    G.   Plaintiff Has Brought The Suit For a Purpose…………….…………….13-14
III. Conclusion………………………………………………………………………14-15

# TABLE OF AUTHORITIES

A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004 (2001)……………………..……7
Berlin Media Art E.K. v. Does 1-144, 2011 WL 4056167 (E.D. CA. 2011)……………..5
Call of the Wild v. Does 1-331, 274 F.R.D. 334 (D.D.C. 2011)…………………….....5
Camelot Distribution Group v. Does 1-1210, 2011 WL 4455249, *3 (E.D.Cal. 2011)..….5
Columbia Pictures Ind., Inc. v. Bunnel, 2:06-cv-01093-FMC-JCx (C.D. Cal. 2006)………………………………………………………………………..………..8
DigitProtect USA Corp. v. Does, 2011 WL 4444666 (S.D.N.Y. 2011)……………………………………………………………………………………...5
Donkeyball Movie, LLC v. Does 1-171, 2011 WL 1807452 (D.D.C. 2011)……………5
Fink v. Time Warner, 2011 WL 3962607……………………………………..……..10
First Time Videos, LLC v. Does 1-76, 2011 WL 3586245 (N.D. IL 2011)………....…5
First Time Videos, LLC v. Does 1-500, --- F.Supp.2d ----, 2011 WL 3498227 (N.D.Ill.,2011)……………………………………………………………..…………5
Hard Drive Productions, Inc. v. Does 1–46, 2011 U.S. Dist. LEXIS 67314 (N.D. Cal. 2011)………………………………………………………………………………….5
Hard Drive v. Does 1-55, 2011 WL 4889094, (N.D.Ill 2011)……………………………5
Liberty Media Holdings, LLC v. Does 1-62, 2011 WL 1869923 (S.D.Cal.2011)……….5
Maverick Entertainment Group, Inc. v. Does 1-2115, 2011 WL 1807428 (D.D.C. 2011)………………………………………………………………………….……....5
MCGIP, LLC v. Does 1–149, 2011 WL 3607666, at 3 (N.D.Cal. 2011)……………….5
MCGIP v. Does 1-316, 2011 WL 2292958 (N.D. Ill. 2011)…………………………….5
MGM Studios, Inc. v. Grokster, Ltd. 545 U.S. 913 (2005)………………………..……8
New Sensations, Inc. v. Does 1-1,474, 2011 WL 4407222, (N.D.Cal. 2011)……….....5
New Sensations, Inc. v. Does 1745, 2011 WL 2837610 (N.D. Cal. 2011)……………...5
NuImage, Inc. v. Does 1-22,322, 2011 WL 3240562 (D.D.C. 2011)……………………5
Patrick Collins v. John Does 1-9, 11-cv-01269 (S.D.N.Y. 2011)……………………….5
Patrick Collins, Inc. v. John Does 1-2590, 2011WL 4407172, * 6 (N.D. Cal. 2011)…..5
Voltage Pictures, LLC v. Does 1-5000, 79 Fed.R.Serv.3d 891 (D.D.C. 2011)…………..5
West Coast Productions, Inc. v. Does 1-5829, 275 F.R.D. 9 (D.D.C. 2011)………......5

## I. INTRODUCTION

This Court's decisions in this matter will have national significance and will be widely cited. With this in mind, Plaintiff respectfully suggests that it will aid the Court to understand the scope of the BitTorrent piracy problem and its motivations for filing these cases.

## II. FACTS

### A. On-Line Piracy Affects Everyone

According to Torrent Portal, a leading torrent index website, it is tracking 2,776,262 torrents (almost all of them copyrighted works), and 2,242,565,420 peers (almost all of them stealing copyrighted works). See http://www.torrentportal.com/. Any person that goes to torrentportal.com can search for any movie, song or book and discover that almost anything can be downloaded for free. By way of example only, there are 5,612 illegal copies of Harry Potter movies; 2,006 illegal copies of Beatles songs or albums; 3,151 illegal copies of Microsoft software or manuals; 11,211 illegal copies of computer games; and 13,315 illegal copies of books, – all available to be downloaded for free. Even high school and college text books are now being put on BitTorrent.[1] The problem for the publishing industry is expected to rapidly increase as the global population moves quickly toward using e-readers like the Kindle and I-Pad

---

[1] "For years digital piracy has been a problem most associated with music. Today, however, creative industries including movie, publishing and television, regard 'monetising' the online world and addressing digital piracy as their greatest challenges. 'The music industry was hit first, but now with increased broadband you have a situation where all the creative industries are at a tipping point.' * * * 'You can see it in the collapsing DVD market; you can see what's going on in TV, newspapers and magazines. And now we're seeing the same thing in the book publishing business and you're going to start seeing piracy of novels and reference books.'" "Music, how, when and where you want it," International Federation for Phonographic Industry (IFPI), at p. 20 (attached).

instead of tangible books.[2]

The scale of infringement is staggering:

> Pre-release copies of Wolverine were downloaded 100,000 times in 24 hours after a leak in April 2009. In 2008, seven million copies of Batman: Dark Knight were downloaded on BitTorrent.[3]

A ten percent reduction in software piracy would yield $400 billion in economic growth:

> If the global software piracy rate was lowered just 10 percentage points over the next 4 years, this would contribute a total of 2.4 million new jobs and $400 billion in economic growth to the global economy.[4]

In short, on-line piracy affects every thought and entertainment producer in the country, including: the authors of articles, books, software and computer games; producers and authors of movies; writers and singers of songs; schools and professors; individuals, big and little companies.  It also affects the companies that make ancillary products such as DVDs, the graphic designers that make the covers, the laborers that make cellophane wrap that covers DVDs, the retail workers at Wal-Mart, Target and other stores that sell them, and the truck drivers who deliver the products to the retail outlets.  The problem for copyright owners is dire:

> We are in danger of creating a world where nothing appears to have any value at all, and the things that we make...will become scarce or disappearing commodities.  Stephen Garrett, Chief Executive, Kudos (a

---

[2] See Copyright Trolling for Dummies; Publisher John Wiley Sues 27 for Sharing 'For Dummies' Books", http://www.techdirt.com/articles/20111101/01172416576/copyright-trolling-dummies-publisher-john-wiley-sues-27-sharing-dummies-books.shtml describing how publisher John Wiley is frustrated that 74,000 copies of his For Dummies books have been illegally downloaded from one website alone and has sued for BitTorrent copyright infringement.  The articles concludes by urging people not to buy For Dummies books because "[t]here is just no good reason to support companies that sue people like this, instead of learning to adapt."  The author fails to appreciate it is impossible to compete against free.  Further, his tag-line "from the getting desperate dept" is an admission that content providers of all stripes are desperate to save their businesses.

[3] See Music, how, when and where you want it," International Federation for Phonographic Industry (IFPI), at p. 20 (attached).

[4] http://www.microsoft.com/piracy/knowthefacts/HowPiracyImpactsYou.aspx

popular UK television and film production company.)[5]

Mainstream media producers and adult entertainment producers are suing for BitTorrent copyright infringement.  Given the enormous magnitude of the problem, Courts should establish precedents that make it easier – not harder – for all copyright owners to combat on-line infringement.

### B. Competing In a Rigged Market Place – The Lure of Free

The International Federation for Phonographic Industry (IFPI), issued a thought provoking report last year entitled "Music, how, when and where you want it," attached as Exhibit A.  On page 18, the IFPI provides statistics establishing that file sharers' primary motivation for their theft is the "lure of free:"

> A separate body of research helps explain why illegal file-sharing is having this impact on consumer behavior, confirming the main driver of piracy to be not better choice or quality, but the "lure of free". <u>Researchers GFK found that "because it's free" was the main answer given among over 400 illegal filesharers in research unveiled in Sweden in July 2009.</u> A study by Entertainment Media Research in the UK found that 71 per cent of those who admitted they increased their file-sharing activity in 2008 did so "because it's free". In Norway, research by Norstat in 2009 also found the most cited reason for illegal downloading from P2P services was "because it's free". Further studies came to broadly the same conclusion in Japan and Belgium in 2009.   (Emphasis added.)

Lawyers and judges write for a living.  Therefore, we understand that creating intellectual products costs money.  Imagine what would happen to our industry if our clients could download and use for free the work products that we labor to create for them.  "Make no mistake, in a world with no copyright protection, freedom of

---

[5] "Music, how, when and where you want it," International Federation for Phonographic Industry (IFPI), at p. 20 (attached).

6

information will become freedom from information because no one will do a damn thing creatively."[6]  Authors and producers across all industries simply cannot compete with free:

> It is the "free-to-user" appeal of illegal file-sharing that creates its unfair advantage over legitimate music services, whose cost base, including payments to artists and copyright holders, cannot compete with the free illegal alternative.[7]

Copyright owners, including Plaintiff, are <u>desperately</u> searching for a cost effective solution to combat the destruction of their businesses.  Toward that end, they have been and will continue to exercise their First Amendment right to petition the courts and lawmakers.  The response to copyright owners' efforts has been enormously positive from all branches of government, including the overwhelming majority of courts across the country supporting copyright owners' attempts to combat the problem of BitTorrent infringement.[8]

---

[6] Id. at p. 23 quoting singer-song writer Teemu Brunila.

[7] Id.

[8] An analysis of the opinions that can be found on Westlaw discussing BitTorrent and joinder leads to the inescapable conclusion that the overwhelming majority of courts support.  While not a complete list of the cases on Westlaw holding joinder is proper the following cases do so hold. DigitProtect USA Corp. v. Does, 2011 WL 4444666 (S.D.N.Y. 2011); Patrick Collins v. John Does 1-9, 11-cv-01269 (S.D.N.Y. 2011); First Time Videos, LLC v. Does 1-76, 2011 WL 3586245 (N.D. IL 2011); Patrick Collins, Inc. v. John Does 1-2590, 2011WL 4407172, * 6 (N.D. Cal. 2011); ) NuImage, Inc. v. Does 1-22,322, 2011 WL 3240562 (D.D.C. 2011); West Coast Productions, Inc. v. Does 1-5829, 275 F.R.D. 9 (D.D.C. 2011); Call of the Wild v. Does 1-331, 274 F.R.D. 334 (D.D.C. 2011);  Maverick Entertainment Group, Inc. v. Does 1-2115, 2011 WL 1807428 (D.D.C. 2011); Voltage Pictures, LLC v. Does 1-5000, 79 Fed.R.Serv.3d 891 (D.D.C. 2011); Donkeyball Movie, LLC v. Does 1-171, 2011 WL 1807452 (D.D.C. 2011);  Camelot Distribution Group v. Does 1-1210, 2011 WL 4455249, *3 (E.D.Cal. 2011); Berlin Media Art E.K. v. Does 1-144, 2011 WL 4056167 (E.D. CA. 2011);  Liberty Media Holdings, LLC v. Does 1-62, 2011 WL 1869923 (S.D.Cal.2011); MCGIP, LLC v. Does 1–149, 2011 WL 3607666, at 3 (N.D.Cal. 2011); New Sensations, Inc. v. Does 1-1,474, 2011 WL 4407222, (N.D.Cal. 2011); Hard Drive Productions, Inc. v. Does 1–46, 2011 U.S. Dist. LEXIS 67314 (N.D. Cal. 2011); New Sensations, Inc. v. Does 1745, 2011 WL 2837610 (N.D. Cal. 2011); Hard Drive v. Does 1-55, 2011 WL 4889094, (N.D.Ill 2011); First Time Videos, LLC v. Does 1-76  --- F.R.D. ----, 2011 WL 3586245 (N.D.Ill.,2011); First Time Videos, LLC v. Does 1-500, --- F.Supp.2d ----, 2011 WL 3498227 (N.D.Ill.,2011); MGCIP v. Does 1-316, 2011 WL 2292958 (N.D. Ill. 2011).

7

### C. The Executive Branch and Congress Are All Very Concerned With The Jobs And Money Lost From Online Piracy

On June 22, 2010, Vice President Biden, speaking for the Executive Branch, said of on-line piracy "[t]his is theft, clear and simple."[9]  "It's smash and grab, no different than a guy walking down Fifth Avenue and smashing the window at Tiffany's and reaching in and grabbing what's in the window." Id.  "[O]n February 16, 2011, the Senate Judiciary Committee, led by Chairman Patrick Leahy (D-Vt.), held a hearing . . . about the growing problem of online infringement. . . ."[10]  Leahy said "[t]he problem of online infringement is real; it is substantial; and it is a drain on our economy, which costs American jobs."  Id.  He continued "[c]opyright piracy and the sale of counterfeit goods are reported to cost the American economy billions of dollars annually and hundreds of thousands of lost jobs." Id.

While the problem has grown exponentially over the last five years, in 2007 the Institute for Policy Innovation found "[u]sing a well-established U.S. government model and the latest copyright piracy figures . . . copyright piracy from motion pictures, sound recordings, business and entertainment software and video games costs the U.S. economy $58.0 billion in total output, costs American workers 373,375 jobs and $16.3 billion in earnings, and costs federal, state, and local governments $2.6 billion in tax revenue."

### D. Core Copyright Businesses Comprise a Huge Part of The U.S.'s Economy

According to the International Intellectual Property Alliance's 2011 report

---

[9] See  http://www.reuters.com/article/2010/06/22/us-usa-trade-web-idUSTRE65L3YN20100622
[10] See http://www.techzone360.com/news/2011/02/16/5318701.htm.

prepared in connection with the U.S. government, attached as an Exhibit, the copyright industry has a total value added to the U.S. economy of 1.6 trillion dollars. The copyright industry employs nearly 10 million people, and these people have an average salary of 78,000 compared to the 61,000 for the rest of the country. As these statistics demonstrate, businesses that depend on copyrights for their survival comprise a <u>huge</u> component of the United States' economy.

### E. Piracy of Adult Content Impedes Parents Ability to Prohibit Children from Watching It

As Congress and parents know – the power of the purse is a tremendous tool for controlling behavior. The ability to download adult content for free is enabling minors to watch movies that are not age appropriate – all while secreting this behavior from parents. Significantly, minors would need a credit card or PayPal account to buy adult content on-line. Many parents would surely notice these charges if they showed up on billing statements. Since piracy makes these movies available for free, parents are denied their right to use the power of the purse to control their children's behavior.

### F. Why is Plaintiff Bringing these Suits?

According to Bitsnoop.com, K-Beech, Inc. has the two most illegally downloaded adult movies in the world.[11] After <u>months</u> of watching its movies be infringed on a massive scale, K-Beech decided to seek redress for its injuries. From reports received by Plaintiff's investigator, IPP Limited, K-Beech knows that its movies are being illegally downloaded through the BitTorrent peer-to-peer file sharing protocol by people

residing in the U.S. well over 100,000 times a month. Indeed, the adult entertainment industry has been particularly hard hit by the online infringement of its copyrights. According to a Miami New Times survey, thirty two percent (32%) of respondents admit to illegally downloading their adult movies.[12]

### 1. Professional Digital Pirates Situate Themselves Overseas; And, Thumb Their Noses at Copyright Owners

Plaintiff sues the only people it can – end users. To explain, there are three types of entities which can be sued for BitTorrent infringement: (a) BitTorrent Clients (the software companies), (b) torrent websites, and (c) end users. As to BitTorrent Clients, context is needed to understand the difficulties. Specifically, to avoid a claim for contributory infringement, in 2001, contemporaneously with Napster's demise, Grokster, a company that studied the A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004 (2001) decision, introduced software and a system intentionally designed so that Grokster could not tell what was being shared among and between its users. Groskter promoted itself as Napster's replacement; its efforts led to MGM Studios, Inc. v. Grokster, Ltd. 545 U.S. 913 (2005) wherein the United States Supreme Court unanimously held that Grokster could be sued for "inducing" copyright infringement for marketing file sharing software. Since BitTorrent has legitimate non-infringing uses, unless a particular BitTorrent Client expressly advertises itself as a means to accomplish copyright infringement, like Grokster did in another context, then a case against said BitTorrent Client would be tough. Moreover, there are countless BitTorrent Clients,

---

[12] See http://business.avn.com/articles/video/Miami-New-Times-Releases-Sex-Survey-Results-447237.html

10

they are available for download for free, and many of these companies are located outside the reach of U.S. courts on purpose.

A suit against the digital thieves running torrent websites, where infringers go to download and distribute songs and movies, would and has been successful.[13] Unfortunately, litigating against torrent sites is virtually impossible because torrent sites intentionally situate themselves overseas in jurisdictions that do not enforce U.S. copyright laws.  For example, one of the most popular torrent sites, obnoxiously thumbs its nose at U.S. copyright owners by posting its responses to demand letters on its website.  See its response to Dreamworks, Inc.'s demand letter stating: "Sweden is a country in northern Europe . . . no Swedish law is being violated . . . you are morons, and you should please go sodomize yourself with retractable batons."[14]  The self proclaimed "Biggest Torrent System", Extratorrent.com, which illegally distributes Plaintiff's movies, not only hides itself in Somalia but changed the top level of its domain from .com to .ws in anticipation of a U.S. Bill entitled Combating Online Infringement and Counterfeits Act ("COICA") becoming law.[15]  COICA which failed to pass in 2010 would have given the U.S. Department of Justice the power to take down ".com" sites because the ".com" registrar resides in the U.S.

On May 12, 2011, a rewritten version of COICA was reintroduced by Senator Leahy as the Protect IP Act.  The Protect IP Act allows the U.S. government to seize the

---

[13] See Columbia Pictures Ind., Inc. v. Bunnel, 2:06-cv-01093-FMC-JCx (C.D. Cal. 2006) (Awarding 111,000 to Plaintiffs against the then popular Torrentspy website.)
[14] See http://static.thepiratebay.org/dreamworks_response.txt
[15] See http://extratorrent.com/ the red lettering on the home page which states please pay attention "[w]e are in the process of migrating the site to our new domain extratorrent.ws."

11

domain name of sites used in foreign jurisdictions.  However, the Protect IP Act does nothing to prohibit an internet user from simply typing in the IP Address of the site.  Therefore, Plaintiff fully expects the torrent sites will start advertising themselves as 123.4.567.89 and the like soon.[16]  Moreover, the power to seize domain names has repetitively used by the U.S. Immigrations and Customs Enforcement (ICE) for quite some time now and has little effect on the business of piracy because the pirates merely buy another domain name and barely miss a beat.[17]

Other efforts to curb copyright infringement, such as throttling down the internet speeds of users of BitTorrent have been met with substantial opposition.  Indeed, Comcast settled a class action for 16 million dollars for throttling[18] and Clearwire[19] and Time Warner[20] were sued earlier this year in class action suits as well.  Additionally, Google now has software that enables consumers to detect ISP throttling efforts so that consumers can migrate toward companies that do not employ this tactic.[21]  And, there are how-to manuals which teach pirates how to avoid detection as a high band width

---

[16] While Plaintiff very much supports the Protect IP Act, Plaintiff recognizes that many of the Bill's provisions are controversial.  For example, there are substantial First Amendment free speech issues which will likely make enforcing the law difficult for years until the Supreme Court adjudicates the Bill's Constitutionality.  Further, the Bill pits the interests of internet service providers, tube sites such as www.youtube.com and social media sites such as Twitter and Facebook against copyright content producers.  Despite the tug of war between interest groups, the Bill does have popular Congressional support and would likely pass.  Unfortunately, Senator Wyden (OR-D) has pocket vetoed it and will likely continue doing so.
[17] See https://www.eff.org/deeplinks/2011/02/what-congress-can-learn-recent-ice-seizures; and http://www.zeropaid.com/news/91400/ice-domain-seizures-a-pointless-exercise/
[18] See http://www.xtemu.com/forum/topic/2878-comcast-settles-p2p-throttling-lawsuit-customers-to-get-refunds/
[19] See http://classactionlawsuitsinthenews.com/class-action-lawsuit-complaints/clearwire-class-action-lawsuit-complaint-filed-over-alleged-internet-data-throttling/
[20] Fink v. Time Warner, 2011 WL 3962607
[21] http://torrentfreak.com/google-joins-fight-against-bittorrent-throttling-isps-090128/

user and thus not have their internet speeds throttled.[22]

### G. Plaintiff Has Brought The Suit For A Proper Purpose

Patrick Collins, Inc. has been in business for almost twenty years.  See Marc Michael Dec. ¶ 3.  Approximately five years ago Patrick Collins, Inc. began a process to strategically improve its brand and products.  Id. at ¶ 4  At that time, a team of top directors, sales people, and administrative employees worked together to bring about sustained improvement.  Id. at ¶ 5.  Since then Patrick Collins, Inc. has become one of the most prominent, popular and critically acclaimed adult movie studios in the world.  Id. at ¶ 6. Every year it produces approximately 50 movies.  Id. at ¶7.   These movies require extensive and time consuming pre-production and creative planning, customer interaction, an intense production schedule, and editing.  Id. at ¶8  We put a significant amount of work into the branding and marketing of our movies, building strong anticipation within the marketplace.  Id. at ¶9.  Through hard work these movies have cultivated a significant fan base.  Id. at ¶ 10. It is incredibly frustrated by the volume of theft of our movies over the internet.  Id. at ¶ 11. Within days of the release the search engine results for its titles predominantly point to illegal BitTorrent downloads.  Id. at ¶ 12.  Nearly every day its manager reads many blog comments, forum comments, or tweets from people anticipating the availability of our movies by BitTorrent, or distributing BitTorrent links to our movies.  Id. at ¶ 13.  The scale of theft of our movies is enormous.  Id. at ¶ 14.  From reports received by our investigator, IPP Limited, its managers know that its movies are being illegally downloaded through BItTorrent peer-

---

[22] http://lifehacker.com/295995/stop-your-isp-from-throttling-bittorrent-speeds?tag=softwarebittorrent

to-peer file sharing protocol by people residing in the U.S. well over 100,000 times a month. It believes that this number is actually much, much higher. Id.  This also does not include illegal streaming of its movies on tube-sites which it can document is in the millions, or the illegal viewing of our movies by download or streaming throughout the rest of the world. Id.  This theft of our property greatly damages our business, products, and reputation. Id. at ¶ 15.  The phenomenon is pervasive in the adult movie industry.  According to a Miami New Times survey, thirty two percent (32%) of respondents admit to illegally downloading their adult movies.[23]

Accordingly, Patrick Collins' motivation for bringing these suits is quite simply to hold the infringers liable for their theft and by so doing hopefully deter the future theft of its movies.  If there was any easier way to stop the infringement, Patrick Collins would immediately pursue it.  However, for reasons too lengthy to explain in great detail here, end user litigation is the only means available to U.S. copyright owners who want to stop BitTorrent infringement.  Moreover, there are countless BitTorrent Clients, they are available for download for free, and many of these companies are located outside the reach of U.S. courts on purpose.

## III. CONCLUSION

Copyright infringement is a huge problem for Plaintiff and the entire thinking world.  Thus, while Plaintiff supports the Protect IP Act and throttling efforts by the ISPs, Plaintiff recognizes none of the tactics proposed in the Protect IP Act or by throttling truly address the core issue in piracy – the moral hazard associated with the

---

[23] See http://business.avn.com/articles/video/Miami-New-Times-Releases-Sex-Survey-Results-447237.html

anonymous ability to steal – by providing <u>real</u> repercussions. If a camera is at a red light, motorists are not likely to run it. It is no different on the information superhighway, and only end user litigation can provide the necessary deterrent. Accordingly, faced with a very serious problem of infringement and no easy solution for solving it, Plaintiff made the difficult choice to enter into a complicated, extraordinarily labor intensive and expensive copyright enforcement campaign against individual file sharers.

DATED this 4th day of November, 2011.

Respectfully submitted,

/s/ Ryan J. Stevens
STEVENS LAW OFFICE, PLC
309 N. Humphreys Street, Suite 2
Flagstaff, Arizona 86001
Telephone: (928) 226-0165
Facsimile: (928) 752-8111
Email: stevens@flagstaff-lawyer.com
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

  I hereby certify that on November 4, 2011 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

                 By: /s/ Ryan J. Stevens