✓ FILED _____ LODGED
____ RECEIVED ____ COPY

NOV 2 8 2011

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ ⹰ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

PATRICK COLLINS, INC.,

    Plaintiff,

v.

JOHN DOES 1-54,

    Defendants.

_____/

CASE No. 2:11:CV-01602-PHX-GMS

THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICES
AND IS SUBJECT TO REJECTION BY THE COURT.

REFERENCE _____ 5.4

(Rule Number/Section)

## DECLARATION TO REFUTE PLAINTIFF'S MEMORANDUM EXPLAINING THE IMPACT OF PIRACY ON U.S. BUSINESS, ITS BUSINESS, THE SCALE OF BITTORENT PIRACY AND WHY IT SUES DOE DEFENDANTS

I, an anonymous John Doe, do hereby declare:

1. I'm over 18 years of age and competent to make this declaration.

2. I have personal knowledge of the facts in this declaration and the memorandum Plaintiff filed on 4 Nov 11 (Document #12), explaining the impact of piracy on U.S. business, its business, the scale of BitTorrent Piracy, and why it sues Doe defendants.

3. I have also previously filed (October 2011) two similar declarations in cases in the Eastern District of Virginia (Richmond Division), *3:11-cv-00531-JAG (Patrick Collins v. Does 1-58)* (Exhibit A), and *3:11-cv-00469-JAG (K-Beech v. Does 1-85)* which directly refutes why Plaintiff "*sues Doe Defendants.*"

4. I'm filing this declaration anonymously, as I'm one of the 200,000+ John Doe defendants in the multitude of copyright infringement cases files throughout the U.S.  If I were to file this declaration under true name, I feel I would be singled out for vindictive prosecution by

my Plaintiff and the network of copyright infringement lawyers that file these types of cases. The case I was under has been dismissed, but like many other Doe defendants, I'm waiting for the statute of limitation to expire. To prevent identification, I will be mailing this declaration to the court and Plaintiff from a State other than my own.

5. Plaintiff will likely claim I have no standing to make this declaration, as I'm not one of the Doe defendants in this case. I believe I do have standing and valuable information concerning the points Plaintiff raises. My standing is based on my direct knowledge of why Plaintiff sues Doe defendants. I have gathered this knowledge first hand (by being a Doe defendant), and by running a Blog, dedicated to posting news and views concerning copyright infringement lawyers (AKA: Copyright Trolls) and John/Jane Does. My Blog can be viewed at http://dietrolldie.wordpress.com/. Because of running this Blog, I have corresponded with many Doe defendants who like myself, are being abused by the copyright infringement lawyers who follow this business model.

6. I agree with Plaintiff that the Court's decision in this matter will have national significance and will be widely cited. I hope my declaration will aid the Court in making a sound decision about the questionable practices of Plaintiff and other copyright infringement lawyers, to include their "*motivation for filing these cases.*" I thank the court for indulging this John Doe.

7. Response to Plaintiff's memorandum, section A. On-Line Piracy Affects Everyone.

Plaintiff states the problem of copyright infringement is a global one threatening to reduce the value of intellectual products or even their eventual disappearance. This in turn will have financial repercussions affecting the global economy. Plaintiff's characterization is excessive and overly dramatic. Copyright infringement is a problem,

but has not lead to a world where the value of intellectual products has disappeared or will soon do so unless the court takes actions on Plaintiff's behalf. Plaintiff cites an example article which he states a problem for the publishing industry is growing as the world population moves toward using e-readers like the Kindle and I-Pad instead of traditional books (Page 4, line 18). Plaintiff knows and understands the technological change from our traditional media to the digital realm. As highlighted by Plaintiff, some of the financial difficulties are not the result of copyright infringement, but due to technological and societal changes that cannot be stopped.

The mainstream music and movie industry has been tackling the problem of copyright infringement for longer than the adult entertainment industry and they are still remaining profitable. Their profits have changes from primarily CD/DVD based sales to a combination of CD/DVD and on-line (download) sales. Plaintiff understands this and even offers a large selection of their adult movie for sale (and immediate download) on their Web site.

Plaintiff and other copyright owners often make the incorrect supposition that each instance of copyright infringement equals a loss sale. If you believe this faulty logic and the number of illegal downloading/sharing they cite, then Plaintiff would be one of the richest people in the world. By using this faulty logic, one could believe that by stopping vehicle theft, all those potential thefts would result in a sale of new or used car. Just because someone copyright infringes on Plaintiff's movie doesn't mean they would have otherwise purchased it if unable to get it for free via BitTorrent.

Plaintiff states because their problem is so large, the courts should set precedents to make it easier for all copyright owners to combat on-line infringement. Plaintiff's

request is flatly ridiculous.  I'm sure the Court will base any decisions (and precedents) on the facts of the case and not adjust its findings just because plaintiff is having a hard time.

8. <u>Response to Plaintiff's memorandum, section B. Competing In a Rigged Market Place – The Lure of Free.</u>

Plaintiff continues to overstate the problem of copyright infringement, "*Authors and producers across all industries simply cannot compete with free.*"  This is blatantly wrong and can be easily seen with the continued successes of the movie and music industries, even with copyright infringement.  These industries have been fighting copyright infringement longer that the adult entertainment industry and have not gone bankrupt by illegal file sharing.  This is not to say that copyright infringement is acceptable or the owners should not defend themselves.  What is irresponsible of Plaintiff is to beg the court to help is find a "*cost effective solution*," for their problem.  It doesn't matter if the entire U.S. government supports the general effort to combat copyright infringement, the court should not temper its sound judgment to make it easier for Plaintiff.  Plaintiff should first take their own cost effective steps before begging the court for aid.

One cost effective measure Plaintiff chooses not to use is to send the Internet Service Providers (ISP) of the offending IP address a "*Take Down Notice.*"  These notices can be accomplished with a simple email to the ISP's legal department, alerting them of the alleged infringement by their IP address and to take steps to immediately stop its availability.  If an ISP decides not to take steps to remove the content or at least tell the subscriber to "*cease and desist,*" this alleged activity, the ISP risks losing their "*Safe Harbor*" status and then can be sued by Plaintiff.  These take down notices force the ISP to act in accordance with the **Online Copyright Infringement Liability Limitation Act** and

**the Digital Millennium Copyright Act.** It should be noted that using a take down notice does not prevent Plaintiff from suing defendants. It is just a logical step to protect ones intellectual property. This step can even prevent future instances of copyright infringement, as the ISP and their customer can take steps to secure a network that is being abused, clean a malware infection on a system, or stop the infringing activity. For ISP customers who refuse to abide by the Take-Down Notice, the ISP has the right to terminate the customer's service; thus effectively stopping the infringement activity.

As Plaintiff and the multitude of copyright infringement lawyer across the U.S. are not using this cost effective valid legal measure to protect their products, one has to wonder why? Some of the major law firms behind these actions (Ira Seigel, D. Gill Sperlein, John Steele, etc.) are not inexperienced in Intellectual Property law and/or the legal options available to their clients. Based on the history of copyright infringement lawyers, the only logical reason for not sending Take Down Notices to the ISPs is Plaintiff wishes for the copyright infringement to continue.

Based on the settlement letters I have seen, as well as correspondence with Doe defendants, Plaintiffs seeks approximately $3,000.00 from each Doe Defendant to settle. Most Plaintiffs also place a short time limit to settle or the settlement fee increases. This settlement is far in excess of the purchase price of the movie in question, legal fees, and any other administrative costs. Even if Plaintiff only receives a 50% settlement rate, they will make $81,000.00 on this case alone. In a 10/10/11 declaration (Exhibit B) filed by Plaintiff's attorney in a similar copyright infringement case (Richmond VA, 3:11-cv-00531-JAG, Patrick Collins v. Does 1-58) Plaintiff states,

> *"From statistics suing 1000s of people nationally, Plaintiff knows that in any given joined suit 35-55% of the Doe Defendants will settle very early in the litigation."* (Section 20. of Plaintiff's declaration)

This does not even address the "later" settlement rates Plaintiff expects.  Because the profit potential is so great, Plaintiff does not wish this activity to stop.  As they have stated, they know their movies will be shared illegally within days of being released.  This knowledge and the easy money copyright infringement lawyers offer, creates an unethical situation that Plaintiff is involved in.

9. Response to Plaintiff's memorandum, section C. and section D. The Executive Branch and Congress Are All Very Concerned With Jobs And Money Lost From Online Piracy; Core Copyright Business Compromise a Huge Part of The U.S.'s Economy.

As previously stated, there are no doubt copyright infringement impacts American businesses.  The area that Plaintiff does not address under this section is how it specifically impacts them financially.  What would be truly enlightening for the court to see is the amount of "*to-date*" revenue these types of copyright infringement law suits across the U.S. have generated for Plaintiff.  There is no need to see the exact details of the settlement agreement between Plaintiff and the Does defendants, only the total revenue generated.  Plaintiff will likely claim they are only recouping losses that were rightful theirs.  This claim is only valid if you believe that each alleged illegal download would have been an actual sale if it wasn't available for free via BitTorrent.  Just because someone would illegally download a movie, doesn't mean they would have paid for it otherwise.

10. Response to Plaintiff's memorandum, section E. Piracy of Adult Content Impedes Parents Ability to prohibit Children from Watching it.

Besides being a pointless part of Plaintiff's memorandum, the statement is incorrect. This can easily be seen by going to two of Plaintiff's Web sites (*www.elegantangel.com* and *dvd.elegantangel.com*). There is no true age verification system in place to prevent minors from viewing the multitude of sexually explicit images from the movies they sell. Note: I did have to click through a "Warning Page" telling me I wasn't allowed to view the content if I was under 18-years old. Not a very thorough measure to ensure a minor doesn't lie (click the enter button) to gain access to the multitude of screen shots from Plaintiff's movies. No movies are available without registering with a credit card, but I saw many images of men and women engaged in various sexual acts that left little to the imagination. Parents still have the ability to monitor and filter the Internet activities of their children, regardless if online piracy is available.

11. Response to Plaintiff's memorandum, section F. Why is Plaintiff Bringing these Suits? Plaintiff claims they are suing end users to hold them liable and to prevent future theft of their products.

Plaintiff incorrectly states it is the only option available to them and "*If there was any easier way to stop the infringement, Patrick Collins would immediately pursue it.*" As previously stated, Plaintiff has decided not to use a simple cost-effective measure, of sending DMCA Take Down Notices to the ISPs, in addition to filing mass John Doe law suits. If the ISPs decide to do nothing to remove the content or at least advice the subscriber, they can lose their "Safe Harbor" status and become liable. These take-down notice also provide more deterrent to future illegal downloading, as the IP owners are advised of the alleged activity by the ISP and to take steps to stop it. This also gives the ISPs the ability to police their subscribers, to include discontinuation of service for repeated complaints.

12. Conclusion.

Plaintiff states only end-user litigation, such as this case can do anything to prevent future copyright infringement activity against Plaintiff. In the overwhelming majority of copyright infringement cases filed by Plaintiff and others, settlements are reached and no trials are started. Myself and other Doe defendants have not settled and our cases were dismissed by Plaintiff or the Court. One key part of the settlement Plaintiff requires is a non-disclosure of the details of the agreement. Since both sides cannot disclose the details of the agreement, how can there be any preventive benefit from the litigation?

Further evidence that Plaintiff is not actually trying to prevent this activity can be found in their 10/10/11 declaration (Exhibit B) in a very similar case in Virginia (3:11-cv-00531-JAG (Patrick Collins v. Does 1-58). In section 16., of the declaration, Plaintiff tells the court they will only sue Doe defendants if they have money (not destitute), not associated with a Police department, and are not public or political figures. Plaintiff essentially stated they will not sue a Doe defendant unless they have money and it will not bring any unwanted attention to their operation. This is not the actions of someone who wishes to prevent future infringement activity. Plaintiff's statement makes it clear that a 20-year old Doe defendant working minimum wage and having no assets can illegally download/share Plaintiff's movies and not worry about being sued by them.

Plaintiff suggests their litigation is the same as a traffic camera at an intersection, catching law breakers as they drive through a red light. An overly simplistic view that does not address the reality that an IP address alone does not equal culpability. The traffic camera records the vehicle license, vehicle details, driver image, and date/time of offense.

Plaintiff's agents only record the IP address of the alleged activity, date/time, and the movie in question.  The recorded IP address only comes back to the person who has paid for service from the ISP.  Where a traffic camera provides the picture of the driver, vehicle, and license plate, Plaintiff only get the IP address.  This is only equivalent to the traffic camera only recording the license plate and not the vehicle or actual driver.  Were such a case actually taken to traffic court, the judge would likely tell the prosecutor to come back when they have prima facie evidence to show the accused committed the crime.

The IP address alone is a poor method to identify who illegally downloaded/shared a copyright protected movie.  Examples of why the registered IP subscriber did not illegally download/share the copyright protected movie are: 1) Home Wifi access point run open (like at an airport or coffee bar) and abused by a neighbor or other unknown person.  2) Guest at the residence abusing the Internet connection without the owner knowing.  3) IP address is part of a group residence (roommates) or apartment building, where the IP owner did not illegally download/share copyright protected movie.  4) Home system infected by a Trojan Horse malware program and controlled by unknown personnel.  One court in 2004 noted this possibility and cited the following.

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed. . . .
> Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) of Defendants. *BMG Music v. Does 1-203, No. Civ.A. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004)* (severing lawsuit involving 203 defendants).

To provide the court more identifying information than the IP address, Plaintiff would have to do some type of investigation. It is much easier for them to collect IP addresses and seek a subpoena for the subscriber information. Once subscriber information is obtained, Plaintiff knows they are about to see the money come to them. As can be seen by the screen shots from an adult movie Webmaster board, "GFY.COM" (Exhibit C), an adult content copyright owner and a well-known copyright infringement lawyer post some information concerning their activities. The lawyer, John Steele (Steele|Hansmeier, PLLC), posts that it doesn't cost the copyright owner any money conduct this legal action with him. The copyright infringement lawyer handles all the costs up front and they split the profits from the operation. The copyright owner, Robbie, states it is a 60/40 split in his favor and states "*Piracy is turning out to be a nice little revenue stream*," as well as "*And it's padding my bank account.*" Robbie also states they set the settlement fee right at the point where it costs the Doe defendant more to fight than settle. A further disturbing point is made by Robbie that in addition to costing the doe defendant more to fight, they will have the added bonus of "*your wife, kids, neighbors, co-workers, etc. finding out ALL your dirty little porn habits that you want to keep private.*" This clearly shows that the Plaintiffs and the copyright infringement lawyers care nothing about possibly implicating innocent people in these allegations. If they admit that their evidence collection methods are not 100% effective all the time, they have to admit that some of the Doe defendants are innocent. As they will not do this and risk losing potential settlement fees, they threaten all the Doe defendants with a federal law suit for downloading/sharing copyright protected pornography. This threat of financial ruin, family and friend embarrassment, convenient settlement option, and non-

disclosure agreement, make it easy for even innocent people to possibly accept paying the settlement fee.

Plaintiff has no real evidence to say who actually illegally downloaded/shared their movie.  As they have stated in their motions, to try and determine who actually did this is cost-prohibitive.  It is simpler for Plaintiff to accuse all Doe defendants and see how many will settle.  This activity is part of Plaintiff's never-ending cycle of revenue generating law suits and non-disclosure settlement agreements.  The fact that a majority of Federal civil cases are settled before trial should not be the justification basis for granting mass subpoenas against Doe defendants to obtain ISP subscriber information.  Plaintiff and the growing number of copyright infringement lawyers are abusing the court for their financial gain.  I thank the court for hearing this declaration.

Dated: 11/18/2011                                    Respectfully submitted,


                                                    John Doe, AKA: DieTrollDie
                                                    *Blog: http://dietrolldie.wordpress.com*
                                                    *Doerayme2011@hotmail.com*

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA RICHMOND DIVISION

**PATRICK COLLINS, INC.,**

      **Plaintiff,**

v.

**DOES 1-58,**

      **Defendants.**

_____/

**CASE No. 3:11-cv-05031-JAG**

## DECLARATION TO REFUTE PLAINTIFF'S DECLARATION IN SUPPORT OF MOTION FOR RECONSIDERATION AND RESPONSE TO SHOW CAUSE ORDER (DOCKET # 22)

I, an anonymous John Doe, do hereby declare:

1. I'm over 18 years of age and competent to make this declaration.

2. I have personal knowledge of the facts in this declarations and the declaration Plaintiff filed on 10 Oct 2011, in support of the motion for reconsideration and response to show cause order (Docket #22)

3. I'm responding to it anonymously, as I'm one of the 200,000+ John Doe Defendants in the multitude of copyright infringement cases filed throughout the U.S. If I were to file this declaration under my true name, I feel I would be singled out for vindictive prosecution from my Plaintiff and the network of copyright infringement lawyers that file these types of cases. The case I was under has been dismissed, but like many other Doe Defendants, I'm waiting for the Statute of limitations to expire. To prevent identification,

I will be mailing this declaration to the court and Plaintiff from a State other than my own.

4. Plaintiff for this case will likely claim I have no standing to make this declaration, as I'm not one of the John Doe Defendants in this case. I believe I do have standing and valuable information concerning the points Plaintiff raises. The reason I have standing to respond to the declaration is Plaintiff indirectly mentions my "internet interest group" in paragraph 8 of their declaration:

*"A simple internet search reveals that there are numerous BitTorent Defense Kits available which promote these types of motions and that there are innumerable free internet interest groups also promoting these types of motions."*

Your honor can visit it at http://dietrolldie.wordpress.com/. The name reflects the view of many people who question the methods copyright infringement lawyers and their customers are plying their trade. In my Blog, I post news and views concerning copyright infringement lawyers (AKA: Copyright Trolls) and John/Jane Does. In this Blog I provide some "Motion" examples/templates, as well help concerning the process of filing motions "Pro See."

As I provide these motions examples/templates that Plaintiff complains about in their declaration, the information I'm providing is relevant and informative to the court. I also have direct information concerning my experience with copyright infringement lawyers in general. I thank the court for indulging this John Doe.

5. Response to paragraph 5. Plaintiff admits he was dismissing Doe Defendants to try and stop any future Doe Defendants from filing similar motions in this District and across the

U.S. This was essentially a "Scare" tactic by Plaintiff, trying to influence others not to exercise one of their legal rights. I continue to see such fear from various Doe Defendants when they ask me on various Blogs and via email, "Will they go after me if I file a motion?" This well justified fear is why I and others has put together our Blogs. One of our goals is to give any Doe Defendant the information and tools to help defend themselves.

One thing strikes me as inconsistent with Plaintiff's action to bring single cases against these Doe Defendants. In Plaintiff's initial complaint, they claim all the Doe Defendants are properly joined (jointly and severally liable). Now only because these Doe Defendants use a valid legal method to challenge Plaintiff's case, they are not jointly and severally liable?

6. Response to paragraph 6. Plaintiff claims that they truly believe these motions filed by the Doe Defendants are filed in "Bad Faith." Plaintiff claims this because it will raise the cost of the individual suit (vs. the mass one) and the eventual settlement amount will increase. This statement by Plaintiff goes to the core of why many of the Doe Defendants are fighting the copyright infringement lawyers. Plaintiff has the view that because they filed against the Doe Defendants, they are all guilty. Their view is there are no innocent parties in any of their cases. I have not heard any Doe Defendants filing these motions that I believe are in bad faith. They are filing these motions to defend themselves. Concerning my case, I filed a motion with the court because I saw the methods used by the copyright infringement lawyers first-hand and was sickened by the veiled threats and extortive feel of it. I will gladly admit to not wanting to go to trial. This is because the cost of doing so will be financially and emotionally draining (for me

and my family), even with the knowledge that I'm innocent.  If I ever go to trial, I

confident I can show the court that I didn't download/share a copyright protected movie

and I have proof of unknown persons using my network connection without my

authorization.  Plaintiff and other copyright infringement lawyers know this and make

their settlement amounts to be less than if a person hires a lawyer to defend them.

Plaintiffs across the U.S. do this expressly to prevent many people from trying to defend

themselves, even when they are not at fault.  What I will not abide is paying a copyright

infringement lawyer thousands of dollars just to make the "threat" of a Federal case go

away.

7.  Response to paragraph 8.  Plaintiff claims there are "innumerable" free Internet interest

groups that provide BitTorrent Defense Kits.  I ask the court to search the Internet for

such support groups and you will find the numbers are easily counted and not as

widespread as Plaintiff claims.  If these support groups and BitTorrent Defense Kits were

so numerous, the court would have been seriously flooded with motions, many of them

better written than the current ones the "Pro See" defendants are using.  The motions

examples/templates I provide on my Blog (https://dietrolldie.wordpress.com/motions/)

are a starting point only for Doe Defendant who wish to defend themselves and cannot

afford an attorney.  I know the value of a good attorney; it is just many Doe Defendants

and I cannot afford them.

8.  Response to paragraph 9.  Plaintiff is wrong in its claim that our efforts to defend

ourselves will not work because "*the problem for copyright owners is too substantial.*"

The size of Plaintiff's problem does not preclude the right to defend oneself.  Each Doe

Defendant has the right to defend themselves and filing motions is part of that right.

Plaintiff correctly states the problem lies with the copyright owner. I do not dispute that copyright infringement occurs and that Plaintiff suffers loses because of it. Plaintiff makes the mistake of blaming all the Doe Defendants for these problems because they have an IP address from an "Expert." The IP addresses of alleged wrongdoers purchased a firm (Expert) with a vested financial interest in collecting and selling such information does not equal culpability. It is only a starting point for their problem solving efforts, not the end state because it costs them too much money to conduct a thorough investigation. The statement that defending against these motions is expensive has no bearing to the rights of the Doe Defendant in filing such motions.

9. Response to paragraph 10. Plaintiff claims they have received *"hundreds and hundreds"* of *"cut and paste"* motions in similar litigations across the country. For the court to properly determine if the Doe Defendant motions are excessive in their volume, Plaintiff needs to inform the court the total number of Doe Defendants that they have sued in the U.S. If Plaintiff provides these numbers, I expect the court will see thousands of Doe Defendants being sued by Plaintiff. The court will likely find the number of Doe Defendants who file motions in these types of cases to be a small number when taken in totality. Plaintiff's claim of excessive cut and paste motions is moot, as they were the ones who listed each John Doe on their complaint. As previously stated, it is the right of all Doe Defendants to defend themselves and file motions. If Plaintiff doesn't have an issue with a Doe Defendant in a single case filing motions (non-mass John Doe), why should he have an issue with a John Doe filing a motion in a mass John Doe case in which he is listed on?

10. Response to paragraph 11. Plaintiff complains that some of the motions filed in other copyright infringement cases (*citing Maverick Entertainment Group, Inc. v. Doe*) were unauthorized copies of motions from other cases. Plaintiff forgets that once the court documents are filed and in Public Access to Court Electronic Records (PACER) system, they are public records in the public domain. The fact that "Pro Se" defendants uses these motions in their defense and failed to adequately tailored them to their specific situation is unfortunate, but not unauthorized. It should also be noted by the court that if Plaintiff is allowed to file mass John Doe cases (one compliant), Doe Defendants should not be criticized for using cut and paste motions multiple times.

11. Response to paragraph 12. Plaintiff goes on to further complain that these motions by Doe Defendants cost them financially and cites the law firm of Fletcher and, Heald & Hildreth, PLC. As previously stated, this point is moot, as each Doe Defendant has the right to defend himself regardless if it makes it hard or costly for Plaintiff.

12. Response to paragraph 13. Plaintiff claims they will sue every Doe Defendant that files a motion to sever if necessary. Plaintiff makes this claim but has no historical data to back it up. The court should ask Plaintiff how many Doe Defendants have they sued and actually gone to trial against since they started going after alleged copyright infringers. Plaintiff stated they usually get 35-55% of the Doe Defendants settling early (paragraph 21). I doubt Plaintiff can even show they have gone to trial on 10% of the Doe Defendant they initially file against. Plaintiff may point out a limited number of default judgments against Doe Defendants have been granted. These are significantly small in number when compared to the number of Doe Defendants (I'm one of them) that have been dismissed by various copyright infringement lawyers after never giving in to the

settlement efforts coupled with repeated threats by Plaintiffs to name them in a Federal court case.

13. Response to paragraph 15. Plaintiff claims that through their investigator, they are aware their movies are being downloaded through BitTorrent well over 100,000 times a month. The court should ask Plaintiff how long they have known of this activity has been going on and what actions have they taken to prevent future illegal downloading/sharing of their movies besides continue to file these mass copyright infringement cases. If Plaintiff was truly concerned with protecting their product, they would be requesting the Internet Service Providers (ISP) notify the identified IP users of the alleged activity and tell them to cease the activity. Plaintiff can still files cases against Doe Defendants if they chose to and it allows the ISP to punish users who are repeat offenders. The current lack of protective action Plaintiff takes to prevent future illegal downloading/sharing of it products suggests they want this activity to continue so they can continue to collect IP addresses and file these types of cases. There is no doubt that these types of cases are a financial benefit to Plaintiff. Plaintiff states in paragraph 21., that 35-55% of the Doe Defendants settle early in these cases. If Plaintiff obtains $2,500.00 per settling Defendants, this case has the potential to generate approximately $50,000.00 - $77,000.00 for this case alone. For settlement amounts of $3,000.00 the range is approximately $60,000.00 - $93,000.00. As Plaintiff has stated they have similar litigations efforts across the country, the amount they expect to generate is substantial. The fact Plaintiff may choose to raise settlement amounts for Doe Defendants who file motions should not be a concern of the court, except that it shows the true motive of Plaintiff – revenue generation.

14. Response to paragraph 16. Plaintiff admits they tailor who they seek settlements from, stating essentially they go after personnel who have money (not destitute) and who are not political figures, public figures, or members of law enforcement organizations. The court should ask Plaintiff why they will not sue political figures, public figures, or members of law enforcement. What makes these people different than the rest of us? Plaintiff will not go after these types of Defendants because of the negative publicity they are likely to face. Any negative publicity places their highly lucrative settlement operations at risk. This tailoring of those worthy of paying settlements amounts to Plaintiff shows they are using the court to further their money making efforts.

15. Response to paragraph 23. Plaintiff states if they are made to file individual cases on each Doe Defendant, they will increase settlement demands and this will decrease their profits. In no place should the court temper its judgment because Plaintiff will not make a profit on their effort. The courts correctly assess Plaintiff's actions were highly suspect and with this statement the court can see their main concern is generating profits through these cases.

16. Response to paragraph 24. Plaintiff states they need to know an IP address resolves to a "solvent" individual before they expend time and money on the effort. Again Plaintiff shows that they are only concerned with making a profit and targeting the Doe Defendants who can afford to settle. Plaintiff seems to be saying they will not actually take a Doe Defendant to trial if they cannot asses their asset value prior to any investigation. With this reasoning, it appears that a 20-year old person with no assets or other material worth could repeatedly download/share Plaintiff's movie without fear of actually being taken to trial by Plaintiff.

17. Response to paragraph 25.  The fact that Plaintiff will show the court copyright protected movies and music files on Torrent Web sites is not relevant to this case.  Plaintiff has already stated to the court that copyright infringement occurs and they are losing revenue because of it.  I'm sure the court agrees with Plaintiff, but such a display to the court is pointless and a waste of time.

18. Response to paragraph 26.  The fact that the same Hash Value was seen by Plaintiff's investigator for all the Doe Defendants does not address the fact that the first file sharer Plaintiff identified may have left the BitTorrent swarm and did not participated with a majority of the other swarm members.  Plaintiff does not address the fact that swarm members could have obtained parts of the file from other swarm members in other States or other locations around the world.  Due to the nature of BitTorrent, it is possible Doe Defendants in this case did not directly share the file in question among the other Doe Defendants.  Plaintiff only ties these Doe Defendants together because of their physical location and does not address the specific details of each Doe Defendant's alleged activity.  If the court is going to correctly grant Plaintiff a subpoena for the subscriber information of the Doe Defendants, the court should be sure the joinder in proper.

## CONCLUSION

The court has properly assessed the actions of Plaintiff as being worthy of sanctions in accordance with Rule 11(b).  I hope the sanctions the court imposes are enough to send a message to Plaintiff and other copyright infringement lawyers that frivolous cases used to conduct shake-down operations against Doe Defendants will not be tolerated.

Dated: 10/18/2011                          Respectfully submitted,


John Doe, AKA: *DieTrollDie*
Blog: http://dietrolldie.wordpress.com/
Doerayme2011@hotmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on 10/18/2011, I served a copy of the foregoing document, via US Mail, on:

> D. Wayne O'Bryan, Esq.
> O'Bryan Law Firm
> 1804 Staples Mill Road
> Richmond VA 23230

Dated: 9/18/2011                                       Respectfully submitted,


John Doe, AKA: *DieTrollDie*
Blog: http://dietrolldie.wordpress.com/
Doerayme2011@hotmail.com

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

PATRICK COLLINS, INC.,

        Plaintiff,

v.

JOHN DOES 1-58,

        Defendants.

**CASE NO. 3:11-cv-00531-JAG**

## DECLARATION IN SUPPORT OF MOTION FOR RECONSIDERATION AND RESPONSE TO SHOW CAUSE ORDER (DOCKET # 22)

I, D. WAYNE O'BRYAN, DO HEREBY DECLARE:

1.      My name is D. Wayne O'Bryan and I am over the age of 18 and am otherwise competent to make this declaration.

2.      I have been retained by Plaintiff in this matter.

3.      I have personal knowledge of the facts stated in this declaration.

4.      Plaintiff and I *sincerely* apologize to the Court for not explaining the litigation strategy set forth in this declaration via a notice which could have been filed in advance of the Court issuing its show cause order.

5.      Plaintiff was voluntarily dismissing movants who were seeking to sever Doe Defendants and suing each of them individually in the hopes that by doing so it would cause future Doe Defendants in similar litigations in this District and around the country to stop filing these motions.

6.      Plaintiff and undersigned genuinely believe these motions to quash are filed in bad faith and that none of the movants seeking severance sincerely want to be sued in an

1

individual suit because it costs more and therefore the settlement amount necessarily must higher.

7.      According to Graham Seifert, one of the primary author of these motions, "[m]y dream would be to have 10,000-20,000 people file all three documents to the lawyers and severely cripple the entire process." See http://lawvibe.com/uscg-sues-bittorrent-users-graham-syfert-of-affinity-law-firm-defends/.

8.      A simple internet search reveals that there are numerous BitTorrent Defense Kits available which promote these types of motions and that there are innumerable free internet interest groups also promoting these types of motions.

9.      These motions will not work because the problem for copyright owners is too substantial.    Nevertheless these motions are expensive to defend against.    Indeed, many intentionally raise issues that have absolutely nothing to do with the subject matter before the court thus requiring Plaintiff to spend resources arguing against abstractions.

10.     Plaintiff has received hundreds and hundreds of cut and paste motions to sever and/or quash in similar litigations across the country.

11.     The cut and paste motions have been put on BitTorrent and other websites containing instructions on how to complete these and are being downloaded by the Doe Defendants and their counsel in these matters.    See http://www.kat.ph/search/law%20firm/. Accord Maverick Entertainment Group, Inc. v. Doe --- F.Supp.2d ----, 2011 WL 1807428 (D.D.C. 2011) finding "the Court recognizes that "at least two" putative defendants (Jasmin Silva, ECF Nos. 56; Mark Benavides, ECF No. 92) have "substantially copied" and filed briefs prepared and submitted by attorney Eric J. Menhart on behalf of his five clients: Xiangping Xu (ECF No. 56), Lori Pearlman (ECF No. 58), Cedric Johnson (ECF Nos. 14, 60), Antonio Forte

2

(ECF No. 85), and Darrin Ross (ECF No. 108). *See* Eric J. Menhart's Notice re: Unauthorized Copying of Brief, ECF No. 124. Like Mr. Menhart, the Court notes the "irony" of such actions in a lawsuit involving copyright infringement."

12.     The law firm of Fletcher, Heald & Hildreth, PLC weighed in with further analysis about motions to quash asserting that "any bump in the litigation road costs money and devalues the lawsuit." See http://www.commlawblog.com/2011/04/articles/intellectual-property/trolls-on-a-roll/.

13.     Plaintiff has every intention of suing every one of the movants that file a motion to sever and proceeding to trial if necessary.

14.     Plaintiff was not dodging the joinder argument because it was afraid to make it; indeed, Plaintiff had already made and won the joinder in this District.

15.     From reports received by Plaintiff's investigator, IPP Limited, undersigned knows that Plaintiff's movies are being illegally downloaded through the BitTorrent peer-to-peer file sharing protocol by people residing in the U.S. well over 100,000 times a month.

16.     For example, through similar copyright infringement suits filed by Plaintiff's lawyers across the country, a police department running a covert investigation was identified as a John Doe defendant; Plaintiff voluntarily dismissed that John Doe. Many John Doe defendants are destitute and therefore not worth suing. Several of the John Doe Defendants have died prior to being identified. Several John Does have been public or political figures who Plaintiff did not to choose to sue.

17.     Plaintiff loses 10-15% of the Doe Identities it subpoenas nationally due to ISP data failure or deletion issues.

3

18.     Due to the dynamic ISP issue, Plaintiff has sued the same Doe Defendant innumerable times several joined suits across the country.

19.     Plaintiff did not call any of the Doe Defendants in this case prior to being called by them in response to the subpoena notices that the Doe received. The Doe Defendants that called Plaintiff generally wanted to discuss settlement options.

20.     Plaintiff has not sent out any demand letters to the Doe Defendants in this case.

21.     From statistics suing 1000s of people nationally, Plaintiff knows that in any given joined suit 35-55% of the Doe Defendants will settle very early in the litigation.

22.     The settlement demands that Plaintiff makes of the Doe Defendants is consistent with the low end of the amounts awarded in the Capitol and Sony cases plus the legal fees and costs associated therewith.

23.     Increasing the costs associated with this litigation by forcing Plaintiffs to file individual suits would only increase the settlement demands, make settlements less probable.

24.     The amount of the labor and expense associated with BitTorrent peer-to-peer copyright litigation may make it prohibitively expensive to sue IP addresses prior to knowing that any particular IP address resolves to a solvent individual who could be served.

25.     Plaintiff intends to show the jury the torrent website from which Defendants downloaded Plaintiff's movie, which contains movies currently out in theaters and songs no rational person would think are available for free.

26.     Plaintiff's investigators use the Hash Value as a digital fingerprint that enables Plaintiff to ensure that all of the infringements alleged in this suit come from the exact same torrent file. Significantly, many of Plaintiff's movies are turned into numerous different torrent files. Plaintiff has not combined infringers of different torrents of the same movie into this suit.

4

**FURTHER DECLARANT SAYETH NAUGHT**

## ATTESTATION

PURSUANT TO 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is

true and correct.

Dated this 10th day of October 2011.                    By:_____
                                                                      D. Wayne O'Bryan, Esq.

5

# EXHIBIT C

story   Bookmarks   Tools   Help

http://gfy.com/showthread.php?s=43131d2883467427686648334a2b6&p=1749585#post1749585

Getting Started    Latest Headlines

Httpeed, Grooby F... ✕ | XBIZ NEWS, Lightspeed, Grooby File... ✕ | ✛

⭐ | ▾ | 🔍 ▾ Google

Copyright infringement is always a crime but fair use is never a Copyright Infringement ☺

**BIG-FAT IMLIVE PAYOUTS**

**LEARN MORE**

don't have to pay for a backup service/ extra hard drives etc.

☐ 09-12-2010, 05:29 PM                                                                                    #299

**johnsteele**
Registered User

Industry Role:
Join Date: Sep 2010
Location: Chicago
Posts: 12

**Hello there:**

As the attorney that has filed the actual lawsuits, I can say that most of the negative comments on this post miss the point of what we are trying to do. I wish to make a couple quick points:

1. We are not looking to end piracy. That will never happen.

2. We are trying to get some "lost" money back to content producers on a contingency basis. If my firm is full of idiots that cannot accomplish this task then our clients are not a dime.

3. I am not trying to push this solution on anyone who would rather not pursue illegal downloaders. If a content producer is comfortable with writing off illegal downloads as a cost of doing business, I respect that.

4. With respect to the comment that most down loaders don't know its illegal, I can't help but wonder if that commenter is serious. Besides, ignorance of the law is no excuse.

5. For the 95% of the people on here that think what we are trying to do is a good idea, thanks!

John Steele

Steele | Hansmeier

                                                                                                          🔒 Quote

☐ 09-12-2010, 05:31 PM                                                                                    #300

**chronig**

Quote:                                                                                                    🔒 Quote

story  Bookmarks  Tools  Help

http://gfy.com/showthread.php?t=985302&page=2

Getting Started    Latest Headlines

htspeed, Grooby F... ×    XBIZ NEWS: Lightspeed, Grooby File... ×    +

🔲 09-04-2010, 10:21 AM                                                                                                          #81

Robbie
Too lazy to set a custom title



Industry Role:
Join Date: Aug 2002
Location: Vegas
Posts: 10,656

> Quote:
> 
> Originally Posted by Damian J 🖼
> Actually the RIAA STOPPED attempting to sue the individuals they claim were sharing files, back in 2008 because it
> was costing too much time and generating a huge loss for them.

Fortunately it's not that way at all for us. Since porn is still "bad", it's been very, very easy to get this done. Folks don't
want to be "outed" for their porn habits. When they get these letters from our attorneys they pay up quick.

And it doesn't cost me a dime and there is no "loss". Only profit. We are doing a 60/40 spit with the attorneys. I get 60.
We set the settlement fee at exactly the price point that it will cost the person more to fight than to settle.

This ain't that hard and it's making me back the money I've lost over the last couple of years. And it's going to start
happening a lot.

When you get that letter from my attorney you'll have the choice of getting your own attorney and facing us in
court...which is more expensive than paying the settlement. And if you fight it, it's not only gonna cost you more
money...but it's going to give you the nice extra bonus of your wife, kids, neighbors, co-workers, etc. finding out ALL
about your dirty little porn habits that you want to keep private.

Watch as everyone gets on board with this. If you are a content producer, you need to be doing this too. It's so simple
and so effective it's ridiculous. And you are not out of pocket one thin dime. It's all profit.

Robbie
Claudia Marie.Com
SOLO.SLUT.CASH

🔳 🔳 🔳 🔳 🔳 🔳 🔳 📝 Quote

🔲 09-04-2010, 11:01 AM                                                                                                          #82

seleria
Registered User

Robbie has an excellent point in that downloading porn is something that most people won't want broadcast. Even though
on the surface porn seems to be more accepted in the mainstream world in the past, to a huge portion of America, it is
still for perverts. And there is a world of difference in being outted for illegally obtaining the new Katy Perry tune and being
outted for d/ling a copy of "Barely Legal Schoolgirl in Midget Tranny Bukake Paradise".

It's hush money, and I LOVE it.



story   Bookmarks   Tools   Help

Getting Started   Latest Headlines

http://gfy.com/showthread.php?t=985302

Google

htspeed Grooby File ...

09-04-2010, 03:31 AM                                                              #41

Robbie
Too lazy to set a custom title

Quote:

Originally Posted by marketsmart
no they are not....

although i support your cause, you obviously have now idea how this works..

your efforts would be better spent producing new content and protecting it...

No, you're wrong.

I'm currently making a 60/40 split on nailing surfers uploading our stuff. Piracy is turning out to be a nice little revenue stream after all. GroobyBucks and Lightspeed are following in the footsteps of a few others who have now figured out how to put a hurt on it.

I'm the one laughing all the way to the bank. The 60/40 split with the lawyers is nice for me. Way better than watching assholes make 100% with stolen content for damn sure. And it's padding my bank account.

Industry Role:
Join Date: Aug 2002
Location: Vegas
Posts: 10,657

Robbie
Claudia-Marie.Com
SOLO SLUT CASH

Quote

09-04-2010, 03:53 AM                                                              #42

Dirty Dane
Registered User

That's great Steve. Good luck with it.

tory  Bookmarks  Tools  Help

http://gfy.com/showthread.php?t=985302&page=7

tting Started    Latest Headlines

tspeed, Grooby File... ×    XBIZ NEWS: Lightspeed, Grooby F... ×

**johnsteele**
Registered User

Industry Role:
Join Date: Sep 2010
Location: Chicago
Posts: 12

09-16-2010, 08:10 AM                                                                                    #348

**Interesting**

I do not wish to engage in a tit for tat. And perhaps I am not used to the rough and tumble online blog sites, but:

1. Referring to me as Jewish in a derogatory way is offensive. And someone claiming to be an attorney while posting an anti-semitic rant on a public website is not exactly an authority on proper behavior. I would assume most anti-semite bigots know that Steele is not a Jewish name BTW.

2. Referring to down loaders who go through the steps of downloading a bittorrent client, going to a bittorrent site, downloading an entire movie, and playing it on their computer as "innocent" is simply not credible, IMHO. Maybe a jury would disagree. To paraphrase, John Madden, that's why we go to trial.

3. 99.3% of all bittorrent date shared is illegal according to one study.

4. We work on contingency, which means that we have NEVER received a dime from Steve Lightspeed nor any of our clients. Not sure how I could "take their money".

5. Federal Court is a bit different than a church. I would submit that federal judges do not have a separate set of constitutional rights for Plaintiffs depending on a judge's moral beliefs. Too many bad movies out there created this misconception.

6. Violating a copyright is wrong. You can justify anything, from speeding to illegal copyright infringement. But thankfully in the court of law, excuses do not rise to affirmative defenses. That is why the US's criminal conviction rate is over 95%.

7. I am no expert on all things related to porn, but I find it hard to believe that a "tube" site that has hundreds or thousands of copyrighted items placed on their site every day is receiving advice from the top anti-piracy law firm in the country that everything is a-ok. If so, I am mistaken.

I do not wish to insult or attack anyone on this site and I am only giving my thoughts on these issues.



<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on 11/18/2011, I served a copy of the foregoing document, via US Mail, on:

**STEVENS LAW OFFICE, PLC**
Ryan J. Stevens
309 N. Humphreys Street, Ste. 2
Flagstaff, Arizona 86001

Dated: 11/18/2011                                   Respectfully submitted,


John Doe, AKA: DieTrollDie
*Blog: http://dietrolldie.wordpress.com*
*Doerayme2011@hotmail.com*

711 Torpedo Way
Liberty Hill, TX 78642



Austin PDC TX 787
MON 21 NOV 2011

NOV 2 8 2011

**U.S. District Court of Arizona**
Sandra Day O'Connor U.S. Courthouse
401 W. Washington Street, Suite 130, SPC 1
Phoenix, AZ 85003-2118