**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Patrick Collins, Inc., ) | No. CV-11-1602-PHX-GMS |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| John Does 1-54, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Pending before the Court is Defendant John Doe No. 6's Omnibus motion to (1) Quash Subpoena or in the Alternative Issue a Protective Order, and (2) Sever Defendants for Misjoinder. (Doc. 6). For the reasons discussed below, the motion is granted in part and denied in part.

**BACKGROUND**

Plaintiff Patrick Collins, Inc. owns a copyright to an adult film entitled "Cuties 2" (the "Work"). Plaintiff alleges that a number of people copied and shared the Work over the internet, in violation of its copyright.[1] (Doc. 26 ¶ 13). It claims that those people did so by joining BitTorrent, a peer-to-peer file sharing protocol that allows users, after installing

---

[1] Citations are to the Amended Complaint. While the Amended Complaint was submitted after Defendant's motion was briefed, the cited portions are substantively similar to the original Complaint, upon which the motion was based.

BitTorrent Client software, to share files with other users. (Doc. 26 ¶¶ 15–19). Together, each one of a group of computers, called a "swarm," uploads and shares a small portion of a large file; the portions are then each downloaded onto individual computers, which in turn reassemble the pieces to form a copy of the original file. (Doc. 26 ¶¶ 28–36). The computers participating in a swarm can join and leave the swarm over a period of months, and the people operating those computers do not necessarily know who the other members of the swarm are. Plaintiff asserts that computers within the district of Arizona participated in the swarm that resulted in the copying and downloading of the Work from May 18, 2011 to July 15, 2011. (Doc. 26-1, Ex. A).

Plaintiff claims that when a file is broken into pieces, the pieces are all marked with the same "hash identifier," and that the computers participating in a swarm can themselves be located through the hash identifier.[2] It claims to have used forensic software to identify a swarm that together copied and downloaded the work onto multiple computers. (Doc. 26 ¶¶ 37–43). Plaintiff claims that its software was able to identify the Internet Protocol ("IP") address associated with each computer which participated in the swarm, and alleges that those IP addresses correspond with individual people who violated its copyright. (*Id.*). Plaintiff applied for and was granted leave to subpoena the Internet Service Providers ("ISP"s) associated with the IP addresses in order to obtain the identity of the individuals associated with each of the 54 IP addresses listed in the complaint. (Doc. 5). The ISPs notified IP holders that their information was being provided to a third party, and on October 21, 2011, Defendant John Doe 6 filed a motion (1) to quash the subpoena or alternately to issue a protective order, and (2) to sever Defendants for misjoinder. While John Doe 6's motion to quash was pending, his ISP did not provide his information to Plaintiff, although Plaintiff obtained the identities of the other Defendants.

---

[2] According to the complaint, the "hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted." (Doc. 26 ¶ 23).

- 2 -

After the ISPs provided Plaintiff with the identities of individual John Does (except for John Doe 6), Plaintiff notified the court of periodic settlements. On October 31, Plaintiff settled with John Doe 13 and John Doe 37. On December 1, it settled with John Doe 42 and John Doe 19. On December 13, Plaintiff moved for an extension of time for service of all Defendants, although it acknowledged at that point that it had the identity of every Defendant other than John Doe 6. (Doc. 20). On January 3, Plaintiff settled with John Doe 8, John Doe 21, John Doe 25, and John Doe 38. (Docs. 23 and 24). On January 7, Plaintiff noticed that it was voluntarily dismissing its claims against 42 other John Does, and filed an Amended Complaint naming only three Defendants, John Doe 6 and two named Defendants. (Docs. 25 and 26). Defendant settled with one of the named Defendants on January 30. (Doc. 32). As a result, John Doe 6 and one named party, formerly John Doe 12, are the only Defendants remaining in this lawsuit.

## DISCUSSION

This is one of many cases filed nationwide by owners of copyrights in adult films alleging that John Doe defendants downloaded their films without authorization through BitTorrent. The progression in this case is typical. First, the Plaintiff uses forensic software to identify IP addresses that it claims are those addresses within a certain federal district that are associated with a particular swarm that shared a particular file, and files a complaint naming numerous John Does associated with the IP addresses as defendants. The plaintiff requests permission to conduct pre-trial discovery to obtain the name, address, and phone number of the people associated with the IP addresses from their ISPs.[3] If a court rules that

---

[3] Other district courts have suggested that, once in possession of the subpoenaed information, plaintiffs attempt to coerce defendants into settling without making an effort to otherwise pursue the litigation. One court has described a situation in which plaintiffs contact the unrepresented IP holders directly and demand that they settle the case to avoid being exposed as a consumer of pornography to their family, friends, and colleagues. *See Raw Films, Ltd. v. Does 1–32*, CV-11-532 (JAG), 2011 WL 6182025, at *3 (E.D. Va. Oct. 5, 2011) ("The plaintiffs seemingly have no interest in actually litigating the cases, but rather

the defendants are not misjoined and that pre-service discovery is appropriate, subpoenas are issued to ISPs, who in turn identify the individuals associated with IP addresses. After the plaintiff obtains the contact information of the holders of the IP addresses, many of those people settle, and the plaintiff drops its claims against most, if not all, of the remaining defendants.[4] District courts across the country have frequently confronted the issues faced by this Court today, and have come to differing conclusions.

**I. Motion to Quash**

In copyright suits against multiple John Doe defendants, a number of courts have granted some form of pre-service discovery. *See, e.g., Openmind Solutions, Inc. v. Does 1-39*, 2011 WL 4715200, at *5-8 (N.D. Cal. Oct. 7, 2011); *New Sensations, Inc. v. Does 1-1474*, 2011 WL 4407222, at *4-7 (N.D. Cal. Sept. 22, 2011). Others have denied the requests for expedited discovery, finding that "Plaintiff's sought-after discovery, as designed, has the potential to draw numerous innocent internet users into the litigation, placing a burden upon them that outweighs Plaintiff's need for discovery." *Pac. Century Int'l, Ltd. v. Does 1-101*, CV-11-2533 (DMR), 2011 WL 5117424, at *2 (N.D. Cal. Oct. 27, 2011). At least one court has issued a protective order designed to prevent the plaintiff from engaging in abusive litigation tactics. In *Digital Sin, Inc. v. Does 1–176*, CV-12-00126, 2012 WL 263491, at *1 (S.D.N.Y. Jan. 30, 2012) the court found that the lack of perfect correlation between IP addresses and Doe defendants, combined with the stigma associated with accusations of even viewing pornography, "gives rise to the potential for coercing unjust settlements from innocent defendants." As a result, it issued a protective order requiring the ISP to serve the

---

simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does.").

[4] A law firm bringing such a case in the Northern District of California was asked by the judge to identify the number of such suits it had brought, and the number of defendants it had eventually served. The firm identified 129 such suits it had brought, and acknowledged that no defendant in any of them had ever been served. *See AF Holdings v. Does 1-135*, CV-11-1333-LHK (N. D. Cal. Feb. 24, 2012, Doc. 43-1).

- 4 -

individual IP holders, rather than to provide their pedigree information to the plaintiff. *Id.* at *6. It furthermore offered each IP holder 60 days after being served to request to litigate the subpoena anonymously, and prohibited the plaintiff, except through counsel, from contacting pro se defendants. *Id.*

Under Rule 26, courts may authorize discovery prior to a Rule 26(f) conference. Courts in the Ninth Circuit generally grant such discovery when a plaintiff shows "good cause," taking into consideration whether:

> (1) the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) the plaintiff has identified all previous steps taken to locate the elusive defendant; (3) the plaintiff's suit against defendant could withstand a motion to dismiss; and (4) the plaintiff has demonstrated that there is a reasonable likelihood of being able to identify the defendant through discovery such that service of process would be possible.

*New Sensations*, 2011 WL 4407222, at *1 (N.D. Cal. Sep. 22, 2011).

The court in *New Sensations* held that the four prongs are met when a plaintiff (1) identifies a number of IP addresses that are linked to the unauthorized downloads on specific dates and at specific times, (2) notes that the information on which individuals are associated with the IP addresses is available only from the ISPs, (3) states a claim for copyright infringement, and (4) demonstrates that the ISP would be able to provide the information on the holder of the IP address. *Id.* at *2–4. Plaintiffs met these four prongs here, so the pre-service discovery was appropriately granted in the Court's previous order. (Doc. 5).

John Doe 6 now claims that the subpoena must be quashed as to him because Plaintiff has brought this lawsuit for an improper purpose, namely, to obtain the identity of people associated with the IP addresses and thereby "force settlements without incurring any of the burdens involved in proving [its] case[]." *Patrick Collins Inc. v. Does 1-3757*, C-10-5886 (LB) 2011 WL 5368874, at *2 (N.D. Cal. Nov. 4, 2011). John Doe 6 claims, and Plaintiffs do not deny, that the method by which the IP address holders are identified may be over-inclusive—an IP address may be faked, a person other than the named IP holder may have

- 5 -

1 used the IP address, either properly or improperly, or the forensic software may not have
2 identified the proper IP address.

3 In this lawsuit, however, some of the tactics described by other courts have not
4 materialized. Plaintiff has not sought additional third-party discovery against IP holders who
5 claim that someone used their IP address. Although Plaintiff has settled some claims, it has
6 dropped its claims against many Defendants. Unlike cases in which no defendants were
7 served, Plaintiff here has served multiple named Defendants, and continues to litigate against
8 one. (Doc. 28). Courts that have denied pre-service discovery usually have done so out of
9 concern that IP holders who did not infringe on the copyright will nevertheless be subject to
10 aggressive settlement tactics. *See Pac. Century*, 2011 WL 5117424, at *2 ("That
11 individual—whether guilty of copyright infringement or not—would then have to decide
12 whether to pay money to retain legal assistance, or pay the money demanded."). The
13 likelihood that John Doe 6 will be subject to such tactics is minimal here; the Court will not
14 conclude based on the tactics of other lawsuits in other districts that this suit was brought for
15 a purely improper purpose.

16 Nor will a protective order issue. A protective order may be issued "to protect a party
17 or person from annoyance, embarrassment, oppression, or undue burden or expense." FED.
18 R. CIV. P. 26(c)(1). Other courts have issued protective orders in BitTorrent-related copyright
19 infringement suits in order to prevent improper tactics such as personal telephone calls from
20 the Plaintiff to pro se Defendants demanding settlement. *Digital Sin*, 2012 WL 263491, at
21 *1. John Doe 6 is represented by counsel, and faces a lower probability of such treatment.
22 To the extent that John Doe 6 wishes to prevent receiving personal telephone calls, he may
23 seek such an order from this. Defendant claims he would prefer that the proceedings take
24 place under seal, but offers no reason that disclosing the fact that a particular IP address is
25 associated with his name constitutes annoyance, embarrassment oppression, or undue burden.
26 Although the Court acknowledges that there is some social stigma attached to consuming
27 pornography, Defendant strenuously denies the allegations, and it is the rare civil lawsuit in
28

- 6 -

which a defendant is not accused of behavior of which others may disapprove. The nature of the allegations alone do not merit a protective order.

The subpoena will not be quashed based on an argument that Plaintiff is pursuing an improper purpose or that there is no good cause to issue it. Nevertheless, John Doe 6 has also claimed that he is improperly joined. (Doc. 6 at 10–11). If John Doe 6 is misjoined, then he will be severed from this litigation and Plaintiff will be required to file an individual claim against him in order to proceed with pre-service discovery.

**II. Joinder**

Permissive joinder of defendants is allowed when:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of related transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

FED. R. CIV. P. 20(a)(2)

In determining whether joinder is appropriate, the Court must, "examine whether permissive joinder would comport with the principles of fundamental fairness or would result in prejudice to either side." *On the Cheap, LLC v. Does 1-5011*, ___ F.R.D. ___2011 WL 4018258, at *1-2 (N.D.Cal. Sept. 6, 2011) (quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000)). "Courts may also consider factors such as the motives of the party seeking joinder and whether joinder would confuse and complicate the issues for the parties involved." *SBO Pictures, Inc. v. Does 1-3036*, C-11-4220 (SC) 2011 WL 6002620, at *3 (N.D. Cal. Nov. 30, 2011).

Courts considering whether parties are properly joined in similar cases are divided as to whether or not people using their computers to participate in the same "swarm" to copy and reassemble pieces of the same file are participating in the same transaction or series of transactions. Some courts have noted, particularly in cases where the issue was considered before pre-service discovery was granted, that "[e]ach putative Defendant is a possible source

- 7 -

for Plaintiff's copyrighted work, and may be responsible for distributing the work to the other putative Defendants." *New Sensations*, 2011 WL 4407222, at *6. These courts have therefore held that when a large number of defendants remain, any of whom may have engaged in specific transactions with others, dismissing for improper joinder is premature. *See Digital Sin*, 2012 WL 263491, at *5 ("The Court simply holds that for purposes of carrying out the initial, necessary discovery in an efficient manner, the claims may remain joined together at this time.").

Other courts have found that participation in the same swarm does not constitute a single transaction or series of transactions. One court found that "mere allegations that Doe Defendants have used the same peer-to-peer network to copy and reproduce their videos is insufficient to meet the standards of joinder." *Hard Drive Prods., Inc. v. Does 1-30*, No. CV-11-345 2011 WL 4915551, at *4 (E.D. Va. Oct. 17, 2011). Another has emphasized that, absent allegations that any particular user copied a piece of the file from or to any other particular user, one could not conclude that the users "were engaged in the single transaction or series of closely-related transactions recognized under Rule 20." *SBO Pictures*, 2011 WL 6002620, at *3.

A recent decision of this district noted that by culling the members of a particular swarm that reside in a particular district, a plaintiff had demonstrated that it is feasible and practical for it to delineate between defendants. *See Third Degree Films, Inc. v. Does 1–131*, CV-12-108 (JAT), at *8 (Mar. 1, 2012) ("Because of the ease with which all of the various users can be separated, the Court finds it would be inconsistent to find a single transaction or occurrence for joinder based solely on Plaintiff's litigation goals of bringing a single lawsuit against the Arizona defendants.").

Only two Defendants remain parties to this litigation. The remaining named Defendant, formerly John Doe 12, entered the swarm at 7:24 am on July 12, 2011, according to Plaintiff's complaint, while John Doe 6 entered the swarm at 11:11 am on June 24, 2011. (Doc. 26-1, Ex. A). Defendant John Doe 6 is located in Sierra Vista, Arizona, and the former John Doe

- 8 -

12 is located in Chandler, Arizona. (*Id.*). Plaintiff alleges that the two remaining Defendants "participat[ed] in the BitTorrent swarm with other infringers" but does not claim that John Doe 6 provided data to the former John Doe 12 or vice versa. (Doc. 26 ¶ 56). Plaintiff included as Defendants only those IP addresses from the swarm in question that were located in Arizona, demonstrating that the actions of the individual members of the swarm are easily distinguishable. Plaintiff alleges no facts that these two particular Defendants shared data with each other, and provides data instead that they were logged on to BitTorrent weeks apart. "The bare fact that a Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals across the country or across the world." *Hard Drive Prods., Inc. v. Does 1–188*, No. CV-11-01566, 2011 WL 3740473, at *13 (N.D. Cal. Aug. 23, 2011).

Plaintiff has not demonstrated that John Doe 6 and the former John Doe 12 engaged in a single transaction or occurrence, or a single series of transactions or occurrences. Defendant John Doe 6 has been improperly joined, and is severed from this lawsuit.

## CONCLUSION

As the Court held in its previous order, Plaintiff has shown good cause to engage in pre-service discovery. Plaintiff does not allege, however, that the two remaining Defendants in this case engaged in the same transaction or series of transactions, and they are therefore not properly joined. John Doe 6 is thereby severed from this lawsuit.

**IT IS THEREFORE ORDERED** that John Doe 6's Motion to Quash Subpoena (Doc. 6) is **denied** with regards to the motion to quash a subpoena and **granted** with regards to the motion to sever Defendants for misjoinder. John Doe 6 is severed from this case and claims against him are dismissed without prejudice.

DATED this 19th day of March, 2012.

*G. Murray Snow*
United States District Judge

- 9 -